■ CHECKRITE PETROLEUM, INC., Respondent-Appellant, v AMOCO OIL Co., Appellant-Respondent.—In an action, *inter alia,* to recover damages for the breach of a brokerage agreement, (1) the parties cross-appeal from a judgment of the Supreme Court, Nassau County, entered August 7, 1978, which, after a nonjury trial, was in favor of the plaintiff in the principal sum of $11,110 and (2) plaintiff appeals from stated portions of an order of the same court, dated May 17, 1978, which, *inter alia,* upon reargument, reduced the original award by $675, purportedly upon consent. Appeal from the order dismissed (see *Matter of Aho,* 39 NY2d 241, 248). Judgment modified, on the law and the facts, by reducing the judgment to $3,415.30. As so modified, judgment affirmed. Defendant is awarded one bill of costs. Checkrite Petroleum, Inc., a petroleum broker, entered into an agreement with Amoco Oil Co. on March 31, 1976. Said agreement was to terminate on May 30, 1981. In essence, this was a brokerage contract pursuant to which Checkrite would serve as Amoco's broker with respect to a number of gas stations. In return, Amoco agreed to pay a commission of 1.9 cents on each gallon of gasoline sold and delivered by Amoco to the retail dealer provided for Amoco by Checkrite. The principals of Checkrite, one Harry Margolis and his wife, sold their entire stock in Checkrite to one George Wisser. The parties disputed the date of sale, Checkrite contending that it occurred on August 1, 1977 and Amoco arguing that it did not occur until August 24, 1977 at the earliest and that it did not become aware of it until August 29, 1977. Amoco, treating such sale as a breach of the antiassignment clause contained in the brokerage agreement, notified Checkrite that it considered the agreement terminated. On August 31, 1977 Checkrite commenced the instant action, *inter alia,* to recover damages for breach of the brokerage agreement. On September 16, 1977, the parties appeared before Special Term, and entered into a stipulation in open court whereby Amoco agreed to deliver gasoline "in the usual quantities" on a C.O.D. basis to certain of the Checkrite stations, including stations designated as Lakeview, Farmingdale, Middle Island and Wyandanch. Amoco reserved the right to approve new dealers proposed by Checkrite for the stations. The stipulation was to expire 10 days after a decision on the merits by the court on Checkrite's first cause of action for a declaratory judgment. The second cause of action, for damages for breach of the agreement, was held in abeyance. Thereafter, Special Term, heard and decided the first cause of action for a declaratory

judgment and, on November 29, 1977, granted judgment declaring that George Wisser's purchase of Checkrite stock did not violate the antiassignment provisions of the brokerage agreement and, therefore, that the agreement remained in full force and effect between the parties. Amoco did not appeal from this judgment. In January, 1978 the parties entered into a stipulation of partial settlement which provided, in pertinent part, that the only issue which remained to be litigated was Checkrite's claim for damages with respect to the Lakeview, Farmingdale, Middle Island and Wyandanch stations. Checkrite sought damages for lost rental and commissions from August 1, 1977, the alleged date of Amoco's breach of the brokerage agreement, to the date on which Amoco resumed gasoline deliveries to those stations. At the trial, the latter dates were established as follows: Lakeview—October 1, 1977, Farmingdale—November 15, 1977 and Middle Island—December 20, 1977. As to Wyandanch, deliveries had not resumed as of the time of trial and damages were sought through January 31, 1978. After trial, the court found that Amoco had breached the contract on or about September 1, 1977. Damages were awarded for the period September 1, 1977 to September 16, 1977 as to all four stations upon the theory that Amoco was in default due to its refusal to supply gasoline. It was on the latter date that Amoco stipulated in open court to resume deliveries "in the usual quantities." Damages were also awarded as to all stations for a "reasonable period" on the theory that Checkrite reasonably required additional time after September 16, 1977 in order to secure operators for the stations. In the case of Famingdale, Middle Island and Wyandanch, such "reasonable period" was found to be 45 days, or from September 16 to October 31, 1977, so that Checkrite was awarded total damages for these three stations from the period September 1 to October 31, 1977. Since the Lakeview station was being supplied by Amoco by September 30, 1977, that date, rather than October 31, was found by the court to terminate damages there. The damages awarded were as follows: Lakeview $532,* Farmingdale $912, Middle Island $5,698 and Wyandanch $3,968, totaling $11,110. The parties cross-appeal from this award. We agree with the trial court that the proof established Amoco's breach of the agreement only as of September 1, 1977 and not as of August 1, 1977, as claimed by Checkrite. Therefore, no damages may be recovered by Checkrite for August, 1977. Nevertheless, in our view, the damages awarded were not warranted by the proof as hereinafter indicated. The rights of the parties with respect to the four gas stations involved will be discussed as follows: *The Lakeview Station:* The proof established that there was a dealer in possession at all times pertinent to this suit. Accordingly, we agree with the trial court's award of the full amount of lost commissions subsequent to September 1, 1977, to wit, $532. We note that Checkrite was originally awarded lost rent in the amount of $675 but that, upon reargument, this amount was deleted from the award, purportedly on consent. Although Checkrite now protests that reduction, this court is without power to review this deletion since it was entered on consent. *The Famingdale Station:* The proof established that there was a dealer in possession at all times relevant. Accordingly, it was error for Trial Term to award damages for a "reasonable period" on the theory that it was necessary to secure an operator for this station. Further, it is clear from the record that no damages were sustained for the period from September 22, 1977 to November 15, 1977, because the dealer did not then have sufficient cash to purchase the minimum load of gasoline required by Amoco (60% of

---

* An award for lost rent was deleted on reargument.

storage capacity). However, the proof of damages during the period from September 1, 1977 to September 21, 1977 is unrebutted. Based on Farmingdale's average monthly sales of gasoline (24,000 gallons), prorated, Checkrite lost commissions on 16,800 gallons, which at 1.9 cents per gallon would amount to total damages of $319.20. *The Middle Island Station:* Checkrite failed to establish that it had a dealer in possession ready to accept gasoline deliveries during the time of Amoco's breach. However, there was testimony which, in our view, established that Checkrite had a prospective dealer for the station, one Ridsky, but was unable to retain him because of its inability to obtain a supply of gasoline from Amoco. Since this failure is attributable to Amoco's breach, Checkrite is entitled to damages for this station. However, such damages should be limited to the period September 1, 1977 to September 27, 1977 for the record establishes that although Checkrite had obtained a prospective replacement dealer, one Adams, as of September 21, 1977, to whom Amoco offered to deliver gasoline starting not later than September 27, 1977, for reasons not appearing, Checkrite did not produce Adams for the purpose of signing a dealer agreement with Amoco until December, 1977. There being no showing that the failure to sign Adams prior to this date was caused by the uncertainty of the supply situation (it will be recalled that Amoco agreed to supply gasoline only until 10 days after a determination on the merits), any delay subsequent to the date of September 27, 1977 must be attributable to Checkrite. On that latter date, Amoco had done all it could reasonably be required to do with respect to making Middle Island an operating station. Based on Middle Island's average monthly sales of gasoline (71,000), prorated, Checkrite lost commissions on 63,900 gallons, which at 1.9 cents per gallon would amount to $1,214.10. Checkrite also established that it lost rent during the period of Amoco's breach of $1,350. Accordingly, the total damages amounted to $2,564.10. *The Wyandanch Station:* As to this station, there was no proof that Checkrite had a dealer installed during the period of Amoco's breach or that its failure to have such a dealer was due to the uncertainty of its relationship with Amoco. Rather, the record suggests that the reason no dealer was produced for this station was because Checkrite wanted Amoco to make certain repairs and install additional pumps. There being no proof that Amoco was responsible for performing such repairs or installing such pumps, the losses as to this station must be attributed to Checkrite itself. Accordingly, no damages are awarded for this station. In sum, the proof supports damages in the total amount of $3,415.30 only. Accordingly, we reduce the judgment to that amount. Hopkins, J. P., Mangano, Rabin and Gulotta, JJ., concur.