■ CMI CLOTHESMAKERS, INC., Respondent-Appellant, v ARMAND KNOPF et al., Defendants and Third-Party Plaintiffs-Appellants-Respondents. CRAFT ROOFING CORP., Third-Party Defendant and Fourth-Party Plaintiff-Respondent; KIB ASSOCIATES, Fourth-Party Defendant-Appellant-Respondent, et al., Fourth-Party Defendants. (Action No. 1.) SPORTSWEAR COMPONENTS, LTD., et al., Respondents-Appellants, v ARMAND KNOPF et al., Defendants and Third-Party Plaintiffs-Appellants-Respondents. CRAFT ROOFING CORP., Third-Party Defendant and Fourth-Party Plaintiff-Respondent; KIB ASSOCIATES, Fourth-Party Defendant-Appellant-Respondent, et al., Fourth-Party Defendant. (Action No. 2.) — In jointly tried actions to recover damages for injury to personal property, the defendants third-party plaintiffs and fourth-party defendant KIB Associates appeal from so much of two judgments (one in each action) of the Supreme Court, Nassau County (Burstein, J.), both entered April 21, 1981, and from so much of two prior orders of the same court (Burstein, J.), dated January 14, 1981 and March 12, 1981, respectively, as "do not recite * * * that the complaint[s] [were] dismissed, with prejudice, and for want and lack of prosecution". The plaintiffs (1) cross-appeal from the two aforesaid judgments, which are in favor of the defendants dismissing the complaints, and (2) appeal (a) as limited by their brief, from so much of an order of the same court (Derounian, J.), dated August 25, 1980, as, in effect, upon reargument, adhered to its prior determination deeming the complaints dismissed unless plaintiffs produced certain records for discovery, and (b) from a further order of the same court (Pantano, J.), dated September 11, 1980, as amended September 17, 1980, which denied plaintiffs' motion to stay entry of judgments dismissing the complaints. Appeals from all orders dismissed (see *Matter of Aho,* 39 NY2d 241, 248), without costs or disbursements. Judgments reversed, without costs or disbursements, orders vacated, defendants' motion to dismiss denied and matters remitted to the Supreme Court, Nassau County, for further proceedings. These actions were brought to recover property damages caused by severe rain storms on or about December 1, 1974, and January 29, 1975. Plaintiff CMI Clothesmakers, Inc., a tenant in defendants' premises, commenced the first action in February, 1975. The amended complaint alleges (a) that defendants failed to provide a roof in good working order and condition and (b) that despite notice to defendants of the defective and negligent condition of the roof, defendants failed to repair same and correct the condi-

tion, resulting in damage to CMI's property as a result of water leaking into the premises. In December of 1977, a second action was commenced against defendants by Sportswear Components, Ltd., Outlander, Ltd., and Benson & Partners, Ltd., all subsidiaries of CMI, to recover for their losses. Their complaint also contained allegations pertaining to the defective condition of the roof. In both actions defendants alleged that they were released "to the extent of plaintiff[s'] insurance recovery, from any and all liability for any loss or damage alleged in the complaint[s]". In mid-1977, defendants served a subpoena duces tecum on plaintiff CMI. Among the documents requested for production at a scheduled examination before trial were all insurance policies issued to CMI in connection with its occupancy of the premises and all proofs of loss filed by CMI. At the examination before trial, defendants were not provided with all the documents. On October 21, 1977, an order was issued (Altimari, J.), granting leave to defendants to conduct a second examination before trial of CMI; the latter was directed to bring to the examination before trial the items requested in the subpoena. While some of the documents were produced at the examination, held on December 13, 1977, others were unavailable. In particular, the actual policy with Lloyds of London and the proof of loss sent to Lloyds of London were not in the possession of CMI. Apparently, Lloyds has a practice of only issuing certificates of insurance to its policy holders while the policy itself is kept in London. The certificate was turned over to defendants. After the court-ordered examinations before trial, plaintiffs' attorney attempted to get copies of the missing documents from the claims adjustor who handled the loss. According to the attorney, he requested these documents anywhere from "nine to fourteen times", without success, during 1978 and 1979. On July 18, 1979, defendants moved, *inter alia,* to dismiss both actions, which had since been joined for trial, for failure to comply with the orders to produce the documents specified in the subpoena. During the pendency of the motion, plaintiffs' attorney suffered two successive heart attacks and was hospitalized. His sole associate contacted defendants' attorneys and informed them of the situation and undertook to provide them with all the relevant documents in his possession which had been marked during the previous examination before trial. These documents were turned over to defendants' attorneys on August 10, 1979. Believing that he had complied with the order of production, plaintiffs' attorney did not submit any papers in opposition to the motion to dismiss the complaints. He relied, instead, on his conversation with defendants' attorneys and on the telephone call to the court clerk informing the latter that the documents had been provided and that the clerk could expect a call from defendants' attorneys to that effect. On August 27, 1979, defendants' motion was granted (Derounian, J.) on default. The order directed dismissal of the complaints in both actions unless plaintiffs furnished the missing documents within 15 days of service upon their attorney of a copy of the order. There is a dispute as to when the August 27 order was served on plaintiffs' attorney. Defendants contend, although an affidavit of service is not contained in the record, that it was served by mail on August 29, 1979. Plaintiffs' attorney states that he only received the order on September 10, 1979, and that this was the first he learned that a default had occurred or that the papers he had provided defendants' attorneys were insufficient. On September 18, 1979 plaintiffs moved to vacate the August 27 order, and they requested additional time to comply with the order to produce. It was mentioned in support of the motion that, if need be, plaintiffs' attorney would fly to the home office of Lloyds in London to get a copy of the missing policy. The court denied the application by an order dated October 5, 1979. On October 26, 1979 copies of the actual policy and the proof of loss were turned over to

defendants. They were obtained as a result of a telegram sent to London. Plaintiffs' default in opposing defendants' motion to dismiss their complaints was caused by a misunderstanding. The attorney handling the motion for plaintiffs was not the principal attorney in the case. Believing, albeit mistakenly, that he had provided the documents in question, his reliance on a telephone call to the court clerk was not so unreasonable as to constitute law office failure (cf. *Barasch v Micucci,* 49 NY2d 594). Given the appearance of legal merit in plaintiffs' actions, the repeated efforts in 1978 and 1979 to obtain copies of the missing documents, and the willingness to go to the extraordinary trouble, if necessary, of flying to London to obtain copies of the documents, the court, on plaintiffs' application, should have granted a reasonable extension of time to produce the documents (cf. *A & J Concrete Corp. v Arker,* 54 NY2d 870; *Jonard Inds. Corp. v Jerico Precision Mfg. Corp.,* 87 AD2d 810). That such would have been the appropriate exercise of discretion is demonstrated by the fact that the documents were turned over to defendants' attorneys three weeks after the order denying plaintiffs' motion. There is no evidence that defendants have been prejudiced by the delay in receipt of the requested documents. Reversal is required. Gibbons, J. P., Weinstein, Bracken and Boyers, JJ., concur.