Jones, J.
We hold that the attorneys who represented this alleged incompetent in the proceedings which resulted in the adjudication of her incompetency had authority to prosecute the appeal from such adjudication and therein to seek review of the denial of the motion for change of venue.
This proceeding was initiated by two nieces of Olga Aho to have their 85-year-old aunt declared incompetent and a committee of her person and property appointed. The petition instituting the proceeding was brought on by order to show cause dated June 29, 1973 in which a guardian ad litem was appointed to protect the interests of the alleged incompetent. Venue was laid in Supreme Court, Westchester County. On July 16, 1973, the firm of attorneys who had been representing the alleged incompetent for the previous 15 months made a demand for change of venue to Schenectady County where Olga Aho was then sojourning with a cousin of her deceased husband. On July 19 the guardian ad litem made a preliminary report in which he reported that he had personally interviewed the alleged incompetent and had arranged for her examination by a psychiatrist selected by him who had concluded that Olga Aho was incompetent to manage her affairs. In conclusion he urged an early jury trial to determine the issue of incompetency.
On July 26 the attorneys representing the alleged incompetent made a formal motion under CPLR 511 (subd [b]) for change of venue to Schenectady County. Among the affidavits submitted in opposition was that of the guardian ad litem, in *244 which he described the circumstances from which he concluded that she was domiciled in Westchester County and again urged an early jury trial to determine the issue of competency. By order dated August 3, Supreme Court denied the motion for change of venue and set the matter down for trial on August 8.
The attorneys for the incompetent immediately appealed from the order of August 3 and by order to show cause containing a temporary stay sought a stay of trial. The stay was denied by the Appellate Division on August 16, and on August 23, before argument of the appeal, the proceeding was peremptorily set down for trial on September 6.
The jury was drawn on September 6 and the trial was held on September 7. It was the unanimous verdict of the jury that Olga Aho was incompetent to manage her affairs. By judgment entered September 18, she was formally adjudicated an incompetent and the court accordingly appointed committees of her person and of her property.
On October 16 the attorneys who had been representing Mrs. Aho served a notice of appeal to the Appellate Division from the Supreme Court judgment of September 18 expressly excluding therefrom any appeal from the adjudication of incompetency, but seeking by such appeal to bring up the intermediate order of August 3 denying the motion for change of venue. By order dated December 27, 1973 on their application the attorneys for the petitioners in the incompetency proceedings were authorized to represent the interests of the petitioners on the appeals to the Appellate Division.
On February 8, 1974 the attorneys for the petitioners moved to dismiss the appeals to the Appellate Division from the August 3 order denying the motion for change of venue and from the September 18 judgment, on the ground, inter alia, that the attorneys who had been representing Olga Aho had no standing or authority to represent her following the adjudication of her incompetency. The Appellate Division denied this motion with leave to renew on argument of the appeals.
On October 18, 1974 following argument the Appellate Division dismissed the appeals. We now modify that disposition.
Addressing first the Appellate Division’s conclusion that the authority of the incompetent’s prior attorneys to represent her ceased on the adjudication of incompetency, our point of *245 departure is Carter v Beckwith (128 NY 312). In that case an adjudicated incompetent had requested an attorney to prosecute proceedings on behalf of the incompetent to supersede the commission of lunacy previously issued against him and to have the possession and control of his property restored to him. The proceedings failed, it having been determined that the lunacy still continued. The attorney then made application to the court for an allowance payable from the assets of the lunatic for the services rendered notwithstanding that the effort had been unsuccessful, but that proceeding abated on the death of the incompetent. Thereafter, the attorney renewed his claim against the incompetent’s estate and was resisted by the administrators. In upholding a recovery by the plaintiff attorney, the court, although acknowledging that the incompetent could not enter into a binding contract of retainer, nevertheless said of the role of the attorney for the incompetent (p 319): "[A]s this exercise of the jurisdiction of the court to deprive a person of his liberty and property on the ground of lunacy, however necessary, is, nevertheless, the exercise of a supreme power, and should be surrounded by all reasonable safeguards to prevent mistake or fraud, so, also, where upon a case presented after inquisition, there is reasonable ground to inquire whether the lunacy still continues, it is highly important for the protection of the rights of the party that he should be afforded all reasonable facilities for the prosecution of the inquiry, and it cannot, we think, be doubted that the court has the power on an application to supersede the commission, where it is convinced that there is probable cause, or even, in a doubtful case, to make the reasonable costs and expenses of the traverse a charge upon the lunatic’s estate, and this although the traverse prove unsuccessful. Unless this power exists, the direction of the statute that on the restoration of reason and the capacity of the lunatic to conduct his affairs, his real and personal estate shall be restored to him, would, in some cases, afford but a barren protection.”
What was said in the Carter case is equally true today, and we look with the same responsible concern on the right of an alleged incompetent to representation by personal counsel where it is sought in the first instance to invoke "the jurisdiction of the court to deprive a person of his liberty and property on the ground of lunacy”. To be sure, in Carter, the precise issue was the personal attorney’s right to compensa *246 tion and not his right to appear. But the language of the court’s opinion makes it clear that the latter was subsumed in the recognition of the former. Neither right was there predicated on the law of contracts. Rather the appearance of the personal attorney and his attendant entitlement to compensation sprang from the fundamental right of the incompetent person, in a matter of such gravity and consequence, to have access to "all reasonable facilities” for the prosecution of the inquiry into the propriety of the continuation of the adjudication of lunacy.
Common sense dictates that if an adjudicated incompetent has the right to representation in an application which attempts to set aside an earlier determination of his incompetency, an alleged incompetent surely must be accorded a corresponding right on appeal in the original incompetency proceeding itself. (As to the right of an incompetent to representation by counsel until final adjudication on appeal generally, see Insanity Proceeding—Right to Counsel, Ann., 87 ALR2d 950, 961-962.) To hold otherwise would be to cut short the alleged incompetent’s right of review at the initial determination of incompetency and to limit him to but a single judicial consideration of an issue and related questions, the significance of which to him defies exaggeration.
Nor might it be assumed that the committee or a guardian ad litem for the incompetent, if one be appointed, would sedulously carry out the wishes of the incompetent person with respect to an appeal.* The committee, whose status derives from the adjudication of incompetency, has an apparent conflict of interest with the incompetent who wishes appellate review of the process which led to the committee’s designation. Moreover, the committee’s responsibility is only to function as agent of the court in the exercise of the latter’s jurisdiction over the incompetent and his property. (Mental Hygiene Law, § 78.01; Matter of McGuinness, 290 NY 117.)
*247 So too, a guardian ad litem may of necessity be obliged to act contrary to the desires of the incompetent and to adopt a position adverse to that urged by his ward. In the discharge of his objective responsibility, the guardian may conclude that the best interests of the incompetent would not be served by prosecuting an appeal. It is incumbent on a guardian to make an objective evaluation of the circumstances and to take such action as will advance what he perceives to be the best interests of the ward; the wishes of the ward will be relevant but not determinative. In the present case the guardian determined to oppose the motion for change of venue; clearly he could not then be expected to take an appeal from the denial of that motion.
Thus, neither the committee nor a guardian ad litem may be regarded as an unbiased protagonist of the wishes of an incompetent seeking appellate review of some portion of the incompetency proceedings; only counsel directly responsive and accountable to the incompetent, whose duty is to carry out the subjective wishes of his client to the best of his ability by appropriate means, can fill this position. It was therefore error to have dismissed the appeals taken to the Appellate Division on the ground that the authority of the incompetent’s personal counsel further to prosecute the proceeding had terminated on the adjudication of incompetency.
The fact that on these appeals it was sought only to attack the denial of the motion for change of venue and not to challenge the finding of incompetency does not vary our conclusion as to the authority of personal counsel. The determination of the venue motion—as will be noted shortly— underlay all that followed including the transfer of control over the incompetent’s property, and review of that determintion, with the aid of counsel, was a significant right of Mrs. Aho. If a committee is to be appointed, the choice of jurisdiction to make the appointment and thereafter to supervise the actions of the committee may well be an issue of the greatest practical significance.
In sustaining the authority of the incompetent’s attorneys to prosecute the appeals we express no view with respect to these attorneys’ right to compensation, a matter not before us. We invite attention, however, to the strictures set out in Carter v Beckwith (128 NY 312, supra) on assessment of such a charge for legal services against property of the incompetent *248 —i.e., that it be the reasonable cost of necessary assistance furnished in connection with proceedings which were fair and not vexatious or groundless and for which there was probable cause, perhaps in an appropriate instance even in a doubtful case. (See, also, Code of Professional Responsibility, especially EC 7-4, DR 7-102, subd [A], par [2].)
We turn then to the other procedural dispositions at the Appellate Division. The personal attorneys sought to raise the venue issue by two means—(1) by direct appeal from the intermediate order of August 3 which denied the motion for change of venue and (2) by appeal from the September judgment following trial which it was asserted also brought up the order of August 3 for review on the ground that that order, although nonfinal, necessarily affected the final judgment (CPLR 5501, subd [a], par 1). The Appellate Division held, and correctly in our view, that any right of direct appeal from the August 3 order terminated with the entry of the September judgment (Dayon v Downe Communications, 42 AD2d 889; Matter of New York Life Ins. Co. v Galvin, 41 AD2d 83, 86). Appellate review of that intermediate order was thereafter available only on appeal from the final judgment on the ground asserted, namely that such order necessarily affected such judgment. Thus, irrespective of the authority of the personal attorneys to prosecute the appeal, the direct appeal from the August 3 order was properly dismissed.
We disagree with the Appellate Division, however, to the extent that it held that the August 3 order was not reviewable on the appeal from the September judgment. The intermediate order of August 3 necessarily affected the final judgment. Whatever may be the rule in other cases (to which we do not now speak), reversal of an order denying the motion for change of venue in any proceeding to determine competency would strike at the foundation on which the final judgment was predicated. In this case any such reversal would inescapably have led to a vacatur of the judgment declaring Mrs. Aho incompetent and to the submission of the issue of incompetency to a court where venue might then properly be laid. Thus, in our view, it was error to conclude that such latter appeal did not bring up for review the order of August 3 denying the motion for change of venue (see Siegel, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 5501, 1975-1976 Pocket Part, pp 222-223; semble contra Matter of Seltzer v Wendell, 11 AD2d 805).
*249 Although the Appellate Division in dismissing the appeals did make a comment on the merits of the venue question, we do not interpret what was written as an effective determination of that issue. The definitive disposition at the Appellate Division was a dismissal of the appeals. Such a disposition precluded that court’s consideration of the appeal on the merits. Nor, presumably on the same analysis, have the attorneys fully briefed the venue issue in our court. Accordingly, the order of the Appellate Division should be modified to the extent that it dismissed the appeal from the September judgment and that appeal remitted to the Appellate Division for consideration on the merits. To the extent that the order dismissed the appeal from the August 3 order it should be affirmed.

 We do not read CPLR 321 or 1201 as impairing Mrs. Aho’s right to participate through representatives of her own selection in a proceeding in which the question of her competency has been properly raised before a court vested with jurisdiction to determine the issue. The existence of a statutory provision which was the predecessor to CPLR 321 (Code of Civ Pro, § 55) did not deter the court from recognizing that right in Carter v Beckwith, (supra). CPLR 1201 is simply an amplification of CPLR 321, procedural in nature, directory only (but applicable in all instances in which the ultimate question of incompetency is not properly at issue), and not to be construed as restrictive of the incompetent’s valuable right of independent representation in a proceeding of the present kind, in which representation either by a committee or a guardian ad litem might be inadequate.