■ J. LYON EISENSTADT CORPORATION, Respondent, v AMERICAN COVERAGE CORPORATION, Appellant, et al., Defendants.—In an action, *inter alia,* for an accounting, defendant American Coverage Corporation appeals from (1) as limited by its brief, so much of an order of the Supreme Court, Kings County, dated May 20, 1977, as confirmed the accounting report of the referee in favor of the plaintiff and against it, (2) as limited by its brief, so much of a judgment of the same court, entered August 17, 1977, upon the referee's report, as awarded the plaintiff $15,730.30 against it, and (3) an order of the same court, dated February 24, 1978, which denied its motion (a) to vacate the judgment and (b) for leave to interpose an amended answer and a cross claim. Appeal from the order dated May 20, 1977 dismissed (see *Matter of Aho,* 39 NY2d 241, 248). Judgment reversed insofar as appealed

from, on the law, and the complaint against the American Coverage Corporation is dismissed. Appeal from the order dated February 24, 1978 dismissed as academic, in light of the determination on the appeal from the judgment. The appellant is awarded one bill of $50 costs and disbursements to cover all appeals. On April 9, 1965 the plaintiff, J. Lyon Eisenstadt Corporation (J.L.E.), entered into a written contract with the defendant Regency Brokers and Consultants, Inc. (Regency). Pursuant to the terms of that contract, Regency was permitted to service all J.L.E. policies and accounts. In return, Regency agreed to pay J.L.E. a percentage of the gross income received by Regency on all insurance premiums on those policies and accounts and all net fees received for servicing or adjusting policy losses during the lifetime of J. Lyon Eisenstadt, J.L.E.'s president and sole shareholder. Upon Mr. Eisenstadt's death, J.L.E. agreed that it would sell to Regency all of its "business and accounts" (except those expressly excluded from the agreement). In return, J.L.E. was to receive as consideration, during the lifetime of Sue Eisenstadt, wife of Mr. Eisenstadt, a certain percentage of the gross income derived on all insurance premiums and a certain percentage of all net fees received by Regency for servicing and adjusting policy losses. In June, 1969 Mr. Eisenstadt died. Regency commenced payment of the commissions to J.L.E. for the benefit of Mr. Eisenstadt's widow. On March 1, 1971 Regency entered into an agreement to sell its general insurance business to the appellant, American Coverage Corporation (American). In consideration for this sale, American was required to pay Regency a percentage of the gross commissions received on the accounts purchased by American, over a period of years. The record indicates, however, that Regency continued to exist as an independent entity and did not merge with American. After its sale agreement with American, Regency continued to make payments to J.L.E. pursuant to the 1965 agreement until September, 1972. In October, 1973 J.L.E. commenced this action against Regency and American for breach of the 1965 agreement. In its complaint J.L.E. alleged that Regency breached the 1965 agreement by failing to pay commissions and fees due pursuant thereto. It further alleged that American, as the "successor in interest" to Regency, assumed all the terms, covenants and conditions of the 1965 agreement. After a hearing before the assigned referee, American and Regency were found liable to J.L.E. for unpaid commissions and a judgment was entered accordingly. Upon review of the language in both the 1965 agreement and the 1971 agreement, we find that American incurred no obligation to pay J.L.E. the commissions and fees owed pursuant to the 1965 agreement. The obligation created by the 1965 agreement was a personal obligation between the parties to that agreement. Upon Mr. Eisenstadt's death, the J.L.E. accounts were sold to Regency. A fixed percentage of the commissions and fees earned on those accounts constituted consideration for the transfer of the accounts. Since the obligation was personal, J.L.E. would have to establish that American expressly or implicitly assumed that obligation. Upon a study of the record, we find no such evidence. After Regency sold its general insurance business to American, it continued to operate as a separate entity. There is no indication that Regency merged with American. Furthermore, American did not intend to assume the obligation owed by Regency to J.L.E. There is evidence in the record that the original draft of the 1971 agreement between American and Regency contained a provision listing J.L.E.'s accounts and Regency's obligations thereunder. This clause did not survive and was omitted from the 1971 agreement. The 1971 agreement, and a modification of that document in July, 1973, both contain a "hold harmless"

clause. This is indicative of American's refusal to assume any part of the obligation owed to J.L.E. by Regency. Accordingly, we reverse the judgment insofar as appealed from and dismiss the complaint as against American. Latham, J. P., Suozzi, Gulotta, Shapiro and Cohalan, JJ., concur.