■ CHICAGO TITLE INSURANCE COMPANY, Respondent, v KENNETH C. HESKESTAD, Appellant. — In an action to recover moneys representing back taxes due on defendant's real estate and paid by plaintiff, defendant appeals from (1) an order of the Supreme Court, Rockland County (Marbach, J.), dated October 24, 1980, which granted plaintiff's motion for summary judgment, and, in effect, denied defendant's cross application for the same relief, and (2) the judgment entered thereon on November 6, 1980. Appeal from the order dismissed (see *Matter of Aho*, 39 NY2d 241, 248). Judgment reversed, on the law, order vacated, plaintiff's motion is denied, defendant's cross application for summary judgment is granted, and the complaint is dismissed. Defendant is awarded one bill of $50 costs and disbursements. On March 11, 1977, defendant, as mortgagor, entered into a mortgage with the Nanuet National Bank. He and his wife were already the title owners to the fee of the realty in question; they were seeking refinancing. The bank engaged plaintiff to issue a title insurance policy on the property. Prior to the execution of the mortgage and issuance of the insurance policy, both of which occurred on the same day, plaintiff had searched defendant's title and discovered that certain back taxes had not been paid. At the closing, plaintiff informed defendant that these taxes

were the only ones which remained open and defendant issued checks to the appropriate taxing authorities. These taxes were omitted for the purpose of title insurance policy coverage. The mortgage between defendant and the bank contained the standard clause in which the mortgagor covenanted to "pay all taxes, assessments, sewer rents or water rates, and in default thereof the mortgagee may pay the same." The title insurance policy between plaintiff and the bank contained a clause which provided that plaintiff would be subrogated to all rights of the insured with respect to any payments made under the policy. At some point subsequent to the execution of these documents, it was discovered that the title search had failed to disclose other taxes which affected the subject property and which had not been paid as of March 11, 1977. The bank made a demand upon plaintiff, pursuant to the insurance policy, to make the applicable payments. Plaintiff complied and thereafter sought reimbursement from defendant, who refused to pay. The instant action followed. Section 254 of the Real Property Law pertinently provides as follows: "In mortgages of real property, and in bonds and notes secured thereby or in assignments of mortgages and bonds and mortgages and notes, or in agreements to extend or to modify the terms of mortgages and bonds and mortgages and notes, the following or similar clauses and covenants must be construed as follows: * * * 6. Mortgagor to pay all taxes, assessments or water rates. A covenant 'that the mortgagor will pay all taxes, assessments or water rates and in default thereof, the mortgagee may pay the same' must be construed as meaning that until the amount hereby secured is paid, the mortgagor will pay all taxes, assessments and water rates which may be assessed or become liens on said premises, and in default thereof the holder of this mortgage may pay the same, and the mortgagor will repay the same with interest, and the same shall be liens on said premises and secured by the mortgage." There can be no doubt that the tax liens against defendant's property which existed prior to the execution of the mortgage were obligations of his which he could expect no other to pay. These obligations, however, were not contemplated by the above statute, which construes defendant's mortgage covenant to reimburse the mortgagee for all taxes and assessments which may *become* liens on the premises. The statute cannot be interpreted as requiring reimbursement for payments made by the mortgagee which were existing liens at the time the mortgage was executed. Although there is no dearth of authority to the effect that liens which come into being subsequent to the mortgage execution are those for which a mortgagee may advance payment and look to the mortgagor for reimbursement, we have found no instances such as the situation at bar. Therefore, in construing the word "become" in subdivision 6 of section 254, we cannot disregard the plain words of the statute in order to extend its reach in favor of what may be seen to be the equitable construction of preventing unjust enrichment (see *Mitchell v Mitchell,* 194 Misc 73). Had the Legislature wished to require that mortgagees be permitted to seek reimbursement for discharging liens on property which existed prior to the execution of the mortgage instrument, it could easily have done so. It did not, and the covenant in defendant's mortgage must be construed as excluding pre-existing liens. Therefore, payment by a mortgagee (or in this instance, by plaintiff as subrogee) must be considered voluntary (see *Chicago Tit. Ins. Co. v Eynard,* 81 Misc 2d 931, affd 84 Misc 2d 605). Although plaintiff's payments satisfied the tax liens on the property, plaintiff was under no legal duty to make such payments except as required by its contract with the Nanuet National Bank. Plaintiff, as subrogee, has no greater right to reimbursement than the bank would have, and the bank has no right to this relief. Lazer, J. P., Mangano, Gibbons and Gulotta, JJ., concur.