■ SOLOMON NAYMAN, Appellant, v REMSEN APARTMENTS, INC., et al., Respondents. (Action No. 1.) REMSEN APARTMENTS, INC., et al., Respondents, v SOLOMON NAYMAN, Appellant (Action No. 2.)—In an action by a landlord for a judgment declaring, *inter alia,* that the respondent Remsen Apartments,

Inc., defaulted upon its obligations under the parties' lease (action No. 1), and an action, *inter alia,* for preliminary and permanent injunctions prohibiting the landlord from taking any steps to terminate the parties' lease (action No. 2), (1) the plaintiff landlord in action No. 1 appeals from an order of the Supreme Court, Kings County (Jones, J.), dated May 17, 1985, which granted the motion of the defendants in action No. 1 for summary judgment dismissing his complaint; (2) from a judgment of the same court, dated May 30, 1985, which dismissed his complaint; and (3) the defendant in action No. 2 appeals from an order of the same court, dated March 29, 1985, which, *inter alia,* on consent, enjoined him from issuing any notice of termination of the lease until the rendering of a final judgment in that action.

Ordered that the notice of appeal from the order dated May 17, 1985, is deemed to be a premature notice of appeal from the judgment entered thereon dated May 30, 1985; and it is further,

Ordered that the appeal from the order entered March 29, 1985, is dismissed; and it is further,

Ordered that the appeal from the order dated May 17, 1985, is dismissed; and it is further,

Ordered that the judgment dated May 30, 1985 is affirmed; and it is further,

Ordered that the respondents are awarded one bill of costs.

The appeal from the intermediate order dated May 17, 1985 must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment *(see,* CPLR 5501 [a] [1]).

Solomon Nayman (hereinafter Nayman) and Remsen Apartments, Inc. (hereinafter Remsen) are the successors in interest to, respectively, the original landlord and tenant of the premises in question, 100 Remsen Street, Brooklyn, an 80-unit apartment building. The lease was originally executed in 1959 for a 21-year term. Among other things, the lease provided that the tenant was to pay the landlord "net rent" of $73,000 per annum, plus "additional rent" consisting of "all taxes, assessments, water rates and charges, sewer rents and other governmental impositions and charges of every kind". The lease obligated the tenant to maintain the premises in good repair, but gave it the right to sublet, sell or assign the

lease, or to demolish the building and rebuild, all without the landlord's consent. Further, the premises would not be considered abandoned by the tenant even if it were left vacant, so long as the tenant continued to maintain it and pay the landlord the net rent and additional rent. However, the landlord could terminate the lease prior to the expiration of the term if the tenant defaulted in its obligations, by giving 60 days' notice by registered mail. The tenant was entitled to cure the default during that period.

The lease also provided for its renewal, solely at the tenant's option, for up to three consecutive 21-year terms. If the option to renew was exercised, the "net rent" of each year of each renewal term was to be $66,000, together with "additional rent". Further, paragraph THIRTY EIGHTH of the lease obligated the tenant to pay, during each year of each renewal term, a sum designated as "additional net rent", which was defined as "15% of the gross income in excess of $175,000 per annum received by the Tenant in the operation in and from the sub-tenants of the Demised Premises".

In 1979, Remsen exercised its option to renew the lease for the first 21-year renewal term, to run from December 15, 1980 to December 14, 2001. Thereafter, in 1981, Remsen notified Nayman of its intent to sell or assign its interest in the lease to a cooperative corporation, and to convert the lease to cooperative ownership. When Nayman disputed Remsen's right to make the assignment, Remsen, in a prior action, sought a judgment declaring, *inter alia,* that the assignment was permitted by the lease, and that the cooperative corporation would be obligated to pay as "additional net rent" under paragraph THIRTY EIGHTH of the lease only an amount equal to 15% of the gross income received in the operation of the building in excess of $175,000. It was Nayman's position at that time that gross income, for the purposes of determining "additional net rent" under paragraph THIRTY EIGHTH, would also include all moneys received by Remsen from the cooperative corporation as the purchase price of the assignment, as well as all moneys paid to the cooperative corporation by sublessees to acquire possessory rights in the premises. This court, however, rejected Nayman's interpretation of paragraph THIRTY EIGHTH in that prior action, stating: "We are unpersuaded, however, that either the sum received by the plaintiff for the assignment of its leasehold interest or the moneys received by the assignee from its future proprietary leases may be construed as gross income for the purpose of paragraph 38 (cf. *Marlton Operating Corp. v Local Textile*

*Mills,* 137 NYS2d 438, 440 [the term gross income does not have a definite and inflexible meaning; it should be 'defined in such a way as to ascertain the sense in which it was used by the parties when they drew the leases']; *277 Park Ave. Corp. v New York Cent. R. Co.,* 106 NYS2d 338 [moneys collected from tenants by an apartment building manager as a service to an on-premises valet were not gross income to the manager as they were neither for the 'use of the demised premises' nor were they 'for privileges therein granted']). Accordingly, plaintiff is entitled to a declaration that it is not liable to defendant with respect to any moneys it may receive from the assignment of its long-term leasehold interest (see *Federal Pacific Elec. Co. v Rao Elec. Equip. Co.,* 14 AD2d 456)" *(Remsen Apts. v Nayman,* 89 AD2d 1014, 1015, *affd* 58 NY2d 1083).

In 1984, the Attorney-General accepted an offering plan for the conversion of the leasehold of 100 Remsen Street to cooperative ownership. Remsen was named as the plan's sponsor, and the respondent Remsen Street Owners, Inc. (hereinafter Owners) was named as the corporation whose shares would be offered. By January 1985, the requisite number of subscription agreements had been obtained, and the defendants requested that the Attorney-General declare the plan effective.

While this request was pending, in March 1985, Nayman commenced the instant action for a declaratory judgment (action No. 1). Nayman's first three causes of action sought a judgment declaring that Remsen is in default of the lease for (a) refusing to rent vacant apartments, (b) failing to keep the building in good repair, and (c) failing to furnish the plaintiff with copies of insurance policies and certificates. The remaining three causes of action sought declarations that the offering plan was unconscionable and that Remsen should be directed to share the proceeds therefrom with Nayman, that all moneys paid by sublessees to Owners for the purchase of acquiring shares in it and for proprietary leases in the premises constitute gross income under paragraph THIRTY EIGHTH, that Nayman had certain rights, e.g., to terminate the lease for the aforementioned defaults, which were not spelled out in the offering plan, and to direct that the offering plan be amended to reflect those rights.

Shortly thereafter, Remsen and Owners commenced an action (action No. 2) against Nayman, seeking, *inter alia,* to enjoin Nayman from further pursuing action No. 1, or from commencing any other actions with respect to the subject premises, on the ground that such actions were vexatious and

of no merit, and alleged that Nayman sought solely to harass the defendants and interfere with their contract rights. The defendants also moved for summary judgment dismissing Nayman's complaint in action No. 1.

On March 29, 1985, Special Term made an order, on consent, which granted a preliminary injunction in action No. 2, *inter alia,* enjoining Nayman from terminating the lease or commencing additional actions concerning the premises until the rendering of a final judgment in action No. 2. Thereafter, by order dated May 17, 1985, the same court granted the motion of the defendants in action No. 1 for summary judgment dismissing Nayman's complaint, and judgment was entered thereon on May 30, 1985.

Special Term properly granted the motion of the defendants in action No. 1 for summary judgment dismissing Nayman's complaint. With respect to Nayman's allegations that Remsen had failed to keep the premises in good repair, we would note only that it was within the court's discretion to determine whether that issue is justiciable at this time. Under the circumstances of this case, Special Term's refusal to issue a declaration on that point was not an abuse of discretion. Further, the lump sums paid by sublessees to Owners were paid to purchase shares in that corporation, and may not be considered as rent. Therefore, any moneys received by Owners from the sale of shares cannot be considered "gross income" for the purposes of paragraph THIRTY EIGHTH of the lease *(see, Remsen Apts. v Nayman,* 89 AD2d 1014, *supra).* On the other hand, moneys received by Owners from sublessees of the individual apartments for rent or maintenance would, of course, constitute "gross income".

Finally, with respect to the order dated March 29, 1985, which granted Remsen's motion for injunctive relief, the order recites that it was granted on consent. As it does not contain a reservation of the parties' rights to appeal *(see, e.g., Messina v Lufthansa German Airlines,* 64 AD2d 890, *affd* 47 NY2d 111), it is not an appealable order *(see, Colletti v Colletti,* 56 AD2d 845; *Korman v City of New York,* 84 AD2d 559; *Matter of Schultz v Schultz,* 117 AD2d 737). If, as Nayman contends, the order was not entered on consent, his remedy is to move to vacate or resettle the order *(see, Colletti v Colletti, supra).* Lazer, J. P., Mangano, Lawrence and Kooper, JJ., concur.