■ ATLANTIC CONTRACTING CORP., Appellant, v HARTFORD ACCIDENT AND INDEMNITY Co., Respondent.—In an action to recover on a payment bond, the plaintiff appeals (1) from an order of the Supreme Court, Queens County (Posner, J.), dated February 10, 1988, which denied its motion pursuant to CPLR 4404 (b) to vacate a decision or alternatively for issuance of findings of fact, and (2), on the ground of inadequacy, from a judgment of the same court, entered March 8, 1988, which, after a nonjury trial, is in its favor and against the defendant in the principal sum of only $94,600.

Ordered that the appeal from the order dated February 10, 1988 is dismissed; and it is further,

Ordered that the judgment is modified, on the facts, by increasing the award to the plaintiff from the principal sum of $94,600 to the principal sum of $220,062; as so modified, the judgment is affirmed, and the matter is remitted to Supreme Court, Queens County, for entry of the appropriate amended judgment; and it is further,

Ordered that the plaintiff is awarded one bill of costs.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see, Matter of Aho, 39 NY2d 241, 248). In any event, in light of our determination, the issues raised on that appeal are academic.

The defendant's principal, Huff Enterprises Inc. (hereinafter Huff), was a contractor which, by agreement with the New York City Housing Authority (hereinafter NYCHA) undertook for $763,000 to replace the roofing on certain buildings in the Whitman Houses in Brooklyn. By the June 20, 1984 payment bond sued upon, the defendant agreed in effect to pay claims for work, labor, and materials expended in connection with the prime contract but which remain unpaid by Huff. By agreement dated February 22, 1985, Huff subcontracted a major portion of the work to the plaintiff and agreed to pay it a total of $683,000. The subcontract specifically provided that

work on the "Children's Center * * * done by Huff" was "[e]xcluded". Pursuant to paragraph 12.6.1 of the subcontract, Huff was entitled to deduct from the progress payments due the plaintiff the cost of correcting any default or neglect in the plaintiff's work "provided, however, that if such action is based upon faulty workmanship or materials and equipment, [NYCHA] shall first have determined that the workmanship or materials and equipment are not in accordance with the Contract".

The defendant does not effectively dispute, and the record establishes, that by the end of August 1985 the plaintiff had completed work on 13 of the 17 buildings, i.e., approximately 76% of the work covered by the subcontract. For reasons that are not here pertinent and which are in any event the subject of an arbitration proceeding between Huff and the plaintiff as mandated by the subcontract, the plaintiff was ordered to stop work, at which time it had billed Huff for a total sum of $519,432, for roofing work, i.e., approximately 76% of the total contract price, which Huff had only partially paid. Upon Huff's refusal to pay the balance due, the plaintiff commenced this action to recover on the payment bond. The defendant's liability is conceded, but a nonjury trial was conducted on the amount owed. At the conclusion of the trial, and without setting forth the facts on which its determination was based, the Supreme Court found the defendant liable in the amount of $94,600, an amount which is some $40,000 more than the defendant at trial urged was due but which is virtually identical to the amount the defendant suggested was due in proposed findings of fact submitted on the plaintiff's posttrial application for vacatur of the decision, or alternatively for issuance of findings of fact. The Supreme Court's denial of that motion is rendered academic by our determination of the plaintiff's appeal from the final judgment.

Although the trial court did not set forth the evidentiary or ultimate facts upon which its determination was based (see, CPLR 4213 [b]), the record before us is complete. In the interest of saving judicial time and further litigation, this court will make the requisite findings of fact (see, CPLR 4213 [b]; see, Matter of Jose L. I., 46 NY2d 1024, 1025-1026; McKnight v Murabito, 139 AD2d 571; see also, CPLR 5522).

The plaintiff established at trial that it completed a total of 129,212 square feet of roofing and that it charged Huff $4.02 per square foot, thus supporting its claim that $519,432 is the gross sum due for the work performed. The defendant, which reluctantly conceded that the charge of $4.02 per square foot

was "correct", nonetheless asserted that the "value" of the plaintiff's work was only $480,109.89. To support its claim, it produced a contract inspector employed by NYCHA who testified from requisition forms submitted by Huff to NYCHA which demonstrate that, as of October 1985 Huff had billed NYCHA for $520,993. That sum purportedly included work done by Huff on the Children's Center, summarily valued at trial at $40,883.49 and deducted from the cost of total work performed to arrive at the $480,109.89 "value". However, it was established on cross-examination that with respect to some buildings, the work was reported to be only 95% complete because such items as cleanup and caulking remained undone. However, the cost of such items was set forth in "punch list[s]" and deducted from the amounts payable to the plaintiff.

We find that the gross amount earned by the plaintiff is $519,432 for the roofing performed pursuant to the subcontract. Moreover, the defendant virtually concedes that extra work was performed by the plaintiff for which it billed Huff $25,320. The defendant does not dispute its liability for this amount. Thus, the gross amount earned by the plaintiff is $544,752.

The parties agree that setoffs must be made against that amount. The total amount of the setoffs is also the subject of dispute. The plaintiff and the defendant agree that the defendant is entitled to a setoff for $17,622 for carting services utilized by the plaintiff, a $17,568 setoff for materials delivered to the plaintiff and evidently paid for by Huff with the understanding that the amount paid would be deducted from the amount owed, and a $10,000 setoff representing the purchase price of a hoist Huff sold to the plaintiff with the understanding that the price would be deducted from the amount payable to the plaintiff. Moreover, the plaintiff conceded at the trial that "punch list" items to be deducted from the amounts payable to it totaled $7,500 and it is not disputed that Huff made payments to the plaintiff totaling $272,000. Thus, by stipulation or concession, $324,690 must be subtracted from the $544,752, so that the amount due to the plaintiff is $220,062. We cannot agree with the defendant, however, that the amount owed the plaintiff should be reduced further.

Huff's vice-president testified at trial to such items as a $5,674.35 "percentage" of the cost of the performance bond, an $8,988.14 "percentage" of an insurance premium, and a $12,681.49 payment for "general conditions". This witness

conceded, however, that there was no agreement by the plaintiff that it would share in these expenses, and indeed this witness claimed he was not "deducting [these expenses] from the moneys that's *[sic]* due" the plaintiff, but was rather "work[ing] backwards to figure what we owe" the plaintiff. Apparently, Huff was contending that any expenses in excess of the $80,000 difference between the prime contract price and the subcontract price "are Huff's money". However, while it is clear that the defendant claims a setoff for these sums against the amount it owes the plaintiff, we discern no basis for allowing these setoffs. Similarly without merit is the defendant's claim for a setoff in the amount of $2,294 purportedly expended to provide a watchman to ensure the "safety" of the plaintiff's president, and a $2,622 setoff for taxes and insurance attributable to unsubstantiated labor costs. Moreover, there is no evidence to support the claim that Huff provided to the plaintiff, and was therefore entitled to deduct from the amount due, $16,916 for labor and $8,387.64 for materials. Finally, we acknowledge that the record establishes that Huff paid $2,400 to tenants in satisfaction of claims made because of a fire at the premises before the plaintiff was ordered to stop work, and that NYCHA imposed on Huff an $18,552 "charge" because of the fire and an additional "charge" in the amount of $729 for clogged drains also caused by the fire. However, although the plaintiff agreed in the subcontract to indemnify Huff for all claims and losses resulting, *inter alia,* from its negligent acts or omissions, we are not persuaded that the plaintiff's leaving of materials on a roof was a cause of the fire. The fire was apparently attributed to vandals. In any event, the defendant is not entitled to deduct from the amount owed on the payment bond amounts which may be due pursuant to the indemnification clause of the subcontract. Such issues are best resolved in the arbitration proceeding between the plaintiff and Huff.

We have considered the parties' remaining contentions and find them to be without merit. Brown, J. P., Eiber, Harwood and Rosenblatt, JJ., concur.