■ GREEN POINT SAVINGS BANK, Respondent, v VIOLET MILLER et al., Defendants, and IRVING ROSENTHAL et al., Appellants. [649 NYS2d 467] —In an action to foreclose a mortgage, the defendant Irving Rosenthal appeals (1) as limited by the appellants' brief, from so much of an order of the Supreme Court, Nassau County (DiNoto, J.), dated February 22, 1994, as confirmed a Referee's report which recommended that he be held in contempt, and fixed the Referee's compensation at $9,750, payable equally by the plaintiff and him, (2) as limited by the appellants' brief, from so much of an order of the same court, dated April 19, 1994, as adjudicated him in contempt of court and set a hearing date to determine the appropriate punishment, (3) from a judgment of the same court, entered April 20, 1994, against him in the amount of $4,875, (4) as limited by the appellants' brief, from so much of an order of the same court, dated September 16, 1994, as imposed a fine upon him in the amount of $250, (5) as limited by the appellants' brief, from so much of an order of the same court, dated October 5, 1994, which, *inter alia,* fixed the Referee's fee at $9,500, and declared that he and his attorney were jointly and severally liable therefor, and (6) from a judgment of the same court, entered December 7, 1994, against him in the amount of $9,500. Richard Bruce Rosenthal, Irving Rosenthal's son and his attorney of record, appeals, as limited by the appellants'

brief, from so much of the order dated September 16, 1994, as adjudicated him in contempt and imposed a fine of $1,000, and purportedly appeals, as limited by the appellant's brief, from so much of an order dated October 5, 1994, as fixed the Referee's fee at $9,500, and declared him jointly and severally liable therefor.

Ordered that the appeals from the orders dated February 22, 1994, and October 5, 1995, respectively, are dismissed; and it is further,

Ordered that the orders dated April 19, 1994, and September 16, 1994, respectively, are reversed insofar as appealed from, on the law; and it is further,

Ordered that the judgment dated April 20, 1994, is reversed, on the law; and it is further,

Ordered that the judgment entered December 7, 1994, is reversed, on the law, the order dated October 5, 1994, is modified, on the law, by reducing the Referee's fee to $1,600 to be borne equally by the plaintiff and Irving Rosenthal; and it is further,

Ordered that the matter is remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith on the issue of whether Richard Bruce Rosenthal is guilty of contempt of court and thereafter for the entry of judgment accordingly and against the appellants for their respective shares of the Referee's fee; and it is further,

Ordered that the appellant and nonparty appellant are awarded one bill of costs.

The appeals from the intermediate orders dated February 22, 1994, and October 5, 1994, must be dismissed because the right of direct appeal therefrom terminated with the entry of judgments thereon (*see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from those orders are brought up for review and have been considered on the appeals from the judgments (CPLR 5501 [a] [1]).

The civil contempt proceeding at issue on this appeal emanates from a mortgage foreclosure action which has been before this Court on at least one prior occasion (*Green Point Sav. Bank v Miller,* 182 AD2d 800). Following this Court's prior decision on an unrelated issue, a contempt hearing was held before a Referee, and thereafter the Supreme Court adjudicated both Irving Rosenthal (hereinafter Irving) and his attorney Richard Bruce Rosenthal (hereinafter Richard) in contempt of court.

We agree with Irving and Richard that the Supreme Court

erred in adjudicating them in contempt. Section 701.4 of the rules of this Court provides, in relevant part: "Except in the case of the most flagrant and offensive misbehavior which in the court's discretion requires an immediate adjudication of contempt to preserve order and decorum, the court should warn and admonish the person engaged in alleged contumacious conduct that his conduct is deemed contumacious and give him an opportunity to desist before adjudicating him in contempt. Where a person so warned desists from further offensive conduct, there is ordinarily no occasion for an adjudication of contempt" (22 NYCRR 701.4). Irving's contemptuous conduct was his failure to appear at two court ordered depositions, one on February 9, 1993, and the other March 11, 1993. The record indicates, however, that the appellant submitted at least two letters from physicians supporting his claim that he was unable to appear because of a lung condition that could be aggravated in a cold climate. Moreover, after the plaintiff's contempt motion characterized his conduct as contumacious, he appeared and testified at a subsequent court-ordered deposition held on May 17, 1993. Thus, Irving desisted from further contumacious conduct and purged himself of any contempt resulting from his earlier failures to appear (see, 22 NYCRR 701.4). Accordingly, the Supreme Court improvidently exercised its discretion in adjudicating him in contempt and ordering him to pay a fine of $250.

With respect to Richard, the conduct which prompted his citation for contempt consisted primarily of disrespectful remarks made to the Referee. At the scheduled March 11, 1993, deposition, after the proceedings had been concluded and the record closed, the Referee reopened the record and made the following notation: "Let the record indicate that I directed counsel, at the conclusion of the proceedings, to leave, and [Richard Bruce] Rosenthal made a statement that's on the record now in which he said that the only bench I should be sitting on is a park bench. This matter is closed for the day".

In accordance with 22 NYCRR 701.5, entitled "Disqualification of judge", a Judge before whom allegedly contumacious conduct occurred is disqualified from presiding at a plenary hearing or trial (as distinguished from summary action), except with the contemnor's consent, when, *inter alia,* "the allegedly contumacious conduct consists primarily of personal disrespect to or vituperative criticism of the judge". Although 22 NYCRR 701.5 speaks in terms of Judges, we find it equally applicable to Referees appointed in accordance with the CPLR to determine an issue or perform an act (*see, e.g.,* CPLR 3104,

4301). Indeed, with certain exceptions not relevant here, "[a] referee to determine an issue or perform an act" has all the powers of a court in performing a like function (*see,* CPLR 4301).

Here, Richard's allegedly contumacious conduct consisted of personal disrespect to and vituperative criticism of the Referee in his capacity as supervisor of the disclosure proceedings. Nonetheless, the Referee refused to recuse himself from presiding over the contempt hearing. Inasmuch as neither Irving nor Richard consented, it was error for the Referee to preside over the hearing. This is plainly borne out by the fact that although the Referee was asked to testify as a witness, he refused because he felt it was "not proper". Pursuant to 22 NYCRR 701.3, in all cases other than those in which the contempt power is summarily exercised, "notwithstanding the occurrence of * * * contumacious conduct in the view and presence of the sitting court, the contempt shall be adjudicated at a plenary hearing with due process of law including * * * compulsory process for [the] production of evidence". Accordingly, we remit this matter for further proceedings on the issue of Richard's contempt.

We also find merit in the appellant's contention that the Supreme Court erred in fixing the Referee's fees. Neither the order of reference dated June 24, 1992, nor the order dated March 31, 1993, set forth a rate of compensation for the Referee (*see,* CPLR 4321), and we see no reason why the $50 per diem statutory rate should not have been used (*see,* CPLR 4321, 8003 [a]). The Referee indicated in his application for compensation that he devoted a total of 32 days to this matter. When multiplied by the $50 per diem statutory rate, we arrive at the sum of $1,600. The Referee's fee is reduced accordingly (*see, Scher v Apt,* 100 AD2d 582).

We have considered the appellant's remaining contentions and find them to be without merit. Joy, J. P., Friedmann, Krausman and Florio, JJ., concur.