■ M Squared New Rochelle, LLC, Respondent, v G&G Properties, LLC, Appellant. [885 NYS2d 516]—

In an action for a judgment declaring that the plaintiff is not in breach of a certain contract for the sale of real property and that the defendant is not entitled to retain the plaintiff's

$500,000 down payment, the defendant appeals from (1) an order of the Supreme Court, Westchester County (Lefkowitz, J.), entered August 21, 2007, which, upon granting the plaintiff's application to convert the defendant's motion, inter alia, to compel the release from escrow of the plaintiff's $500,000 down payment into a motion for summary judgment declaring that the plaintiff is in breach of the contract, that the escrowee must release the down payment to the defendant, that the defendant is entitled to retain the down payment, and that the plaintiff is obligated to release and cancel a notice of pendency filed in connection with the real property, denied its converted motion for summary judgment and granted the plaintiff's cross motion for summary judgment declaring that the plaintiff is not in breach of the contract and that it is not entitled to the down payment, and (2) a judgment of the same court dated March 17, 2008, which, upon the order, is in favor of the plaintiff and against it declaring that the plaintiff is not in breach of the subject contract.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is modified, on the law, (1) by deleting the provision thereof declaring that the plaintiff is not in breach of the contract and substituting therefor a provision thereto dismissing the cause of action for a judgment declaring that the plaintiff is not in breach of the contract, (2) by adding provisions thereto declaring that the escrowee must release the $500,000 down payment to the defendant and that the defendant is entitled to retain the down payment, and (3) by adding a provision thereto declaring that the plaintiff is obligated to release and cancel the notice of pendency filed in connection with the subject real property; as so modified, the judgment is affirmed, those branches of the defendant's converted motion which were for summary judgment declaring that the escrowee must release the down payment to it, that it is entitled to retain the down payment, and that the plaintiff is obligated to remove and cancel the notice of pendency are granted, the plaintiff's cross motion for summary judgment is denied, the order is modified accordingly, the second, third, fourth, and fifth counterclaims, so much of the first counterclaim as was for a judgment declaring that the contract is terminated, and so much of the sixth counterclaim as was for a permanent injunction enjoining the plaintiff from interfering with or preventing the defendant from leasing or marketing the subject real property are severed, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings on those counterclaims.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

On August 19, 2004 the defendant agreed to sell certain real property to the plaintiff for the sum of eight million dollars, under terms and conditions specified in a contract of sale. Section 2.02 of the contract provided, among other things, that the plaintiff's obligations under the contract were to be contingent on its having obtained "all local, state and federal approvals necessary to construct at least 120 residential units" on the property. No closing was ever scheduled with respect to the sale.

In 2007 the plaintiff commenced the instant action, inter alia, for a judgment declaring that it is not in breach of the contract. As of the time of the filing of its complaint on February 28, 2007, and as of July 9, 2007, when its attorney executed an affirmation in support of its cross motion for summary judgment, the plaintiff claimed that, contrary to the defendant's contention, it had not yet managed to obtain all "local approvals" that were necessary for it to be permitted to construct the 120 residential units.

A schedule set forth in section 2.03 of the contract provided that the plaintiff's entire $500,000 down payment would become "non-refundable . . . at the expiration of twenty four (24) months from the start of the Due Diligence Period," as that term was defined in the contract. While this schedule was expressly subject to whatever contrary provision might appear in section 2.02 or "elsewhere" in the contract, section 2.02 complements the schedule in section 2.03, and confirms that the $500,000 down payment became nonrefundable under the circumstances of this case. In his affirmation dated July 9, 2007, the plaintiff's counsel conceded that more than 30 months had passed since the start of the "Due Diligence Period."

In relevant part, section 2.02 provides: "If at any point in [the plaintiff's] pursuit of the Required Approvals, [the plaintiff] determines . . . that the development . . . is not economically feasible [it] shall have the right to terminate the agreement. If [the plaintiff] thus terminates this Agreement, this Agreement shall be null and void in which case the Deposit shall be returned to [the plaintiff], *except that [the defendant] shall be entitled to retain any portion of the Deposit that has become nonrefundable under the Schedule set forth in Section 2.03"* (emphasis added).

This language, like the schedule set forth in section 2.03, is unambiguous. Section 2.02 compels the conclusion that the plaintiff would forfeit its entire down payment even if, at any point after the expiration of the relevant 24 months, measured from the start of the due diligence period, it had *rightfully* terminated the contract for reasons relating to the economic feasibility of the project. In fact, section 2.03 provides that the plaintiff will, in all events, be deemed to have forfeited its down payment upon the expiration of the 24-month period following the start of the due diligence period, irrespective of what the reason for termination might be, *unless* a provision found "elsewhere" in the contract required a different conclusion. There is no such contrary provision "elsewhere" in the contract, and there is no reason not to enforce section 2.03 of the contract according to its plain terms.

Additional support for this interpretation is found in section 4.02 of the contract, which provides that, "in the event that [the required] approvals are not granted on or before thirty months from the start of the Due Diligence Period, the [defendant] shall have the option to either extend the closing date or terminate the contract." Since more than 30 months had elapsed since the start of the due diligence period, even if the required approvals had not been obtained as of that date, as the plaintiff has, in fact, consistently argued, the defendant would have had the right to terminate the contract in accordance with section 4.02 of the contract, and the $500,000 down payment would have become nonrefundable in accordance with sections 2.02 and 2.03 of the contract.

The provisions of the contract referred to above evince an intent that the defendant, as seller, would, under virtually no circumstances, be contractually obligated to close title at any time after the expiration of the 30-month period described above, as well as an intent that, in the event that the defendant were to terminate the contract due to the failure to close within that period, it would be entitled to retain the plaintiff's entire down payment (*cf. Z/Z Sullivan Realty Co. v Ronan*, 189 AD2d 1084, 1085-1086 [1993] [buyer made $80,000 additional deposit, $50,000 of which was nonrefundable]; *Oppisso v Commerce Bank, N.A.*, 11 Misc 3d 1069[A], 2006 NY Slip Op 50442[U] [2006] [forfeiture of $100,000 down payment where buyer failed to exercise right to terminate contract during the contractually defined 275-day period allowed for obtaining required approvals]). "For the [defendant] the [$500,000] deposit served to cover its risk for keeping the [property] off the market should the purchaser default" (*Uzan v 845 UN Ltd. Partnership*, 10

AD3d 230, 240 [2004]). Even if the defendant would not be entitled to retain the deposit in the event that *it* were shown to have been in breach of contract at any time, there is no evidence that the defendant was ever in breach.

Although section 13.04 (a) of the contract required the defendant to remedy any building code violations "prior to or by the time that closing of title occurs," there is no proof that this provision was breached. Contrary to the plaintiff's contention, the contract contains no provision requiring the defendant to guarantee to the plaintiff, in writing, and prior to the scheduling of a closing, that no third party might at some point come forward and claim an easement by prescription with respect to any portion of the property. Rather, section 13.01 of the contract merely afforded the defendant the right to adjourn the closing—a closing that the plaintiff has never been willing to schedule—for up to 60 days in order for the defendant "to remove any defects in or objections to title noted in [the] title report."

In addition, we agree with the defendant's contention that the "Required Approvals" had, in fact, been obtained by the plaintiff as early as January or February 2006, and perhaps as early as 2005, and that a closing should have been scheduled within 60 days after the 2006 approvals had become "non-appealable and non-reviewable," as provided in section 2.02 of the contract. The approvals issued in 2005 and 2006 had been obtained in connection with what was then described as a project entailing the construction of condominium units. Contrary to the conclusion of the Supreme Court, the plaintiff had no right to delay the closing of title beyond the contractually-specified time limit by changing the nature of the project from condominiums to rental units, thus incurring the need to obtain yet another set of approvals. While the Supreme Court correctly noted in its determination that the contract did not require construction of condominium units, as opposed to rental units, the contract contained nothing that would have allowed the plaintiff to prolong an already extended delay in proceeding to a closing of title by changing the nature of the project from one type of ownership to another after the "Required Approvals" specified in section 2.02 of the contract had already been obtained.

Thus, we conclude that the defendant was, and still is, entitled to terminate the contract; that it is entitled, upon such termination, to the retention of the $500,000 down payment; and that the plaintiff must cancel and remove the notice of pendency. In light of our determination that the defendant rightfully terminated the contract based on the passage of time alone, in

accordance with section 4.02 of the contract, we need not address whether the plaintiff was or was not in breach of contract when it commenced this action in February 2007. The plaintiff sought a judgment declaring that it was not in breach of the contract solely as a predicate for the return of the down payment. Since the plaintiff is not entitled to the return of the down payment whether it breached the contract or not, the cause of action for a judgment declaring that it was not in breach must be dismissed for failure to state a cause of action. Contrary to the plaintiff's contention on appeal, since it made a cross motion for summary judgment, and expressly requested that the Supreme Court treat the defendant's motion as one for summary judgment, this Court is authorized to determine whether dismissal of the complaint or any cause of action set forth therein is warranted. Mastro, J.P., Dillon, Miller and Balkin, JJ., concur.