■ In the Matter of the Estate of IRVING BERK, Deceased. HUA WANG, Also Known as JUDY WANG, Respondent-Appellant; JOEL BERK et al., Appellants-Respondents. [897 NYS2d 475]—

In a probate proceeding in which Hua Wang, also known as Judy Wang, petitioned pursuant to SCPA 1421, inter alia, to determine the validity and effect of an election pursuant to EPTL 5-1.1-A asserted by her against the estate of the decedent Irving Berk, the co-executors of the decedent's estate, Joel Berk and Harvey Berk, appeal, as limited by their brief, from (1) so much of an order of the Surrogate's Court, Kings County (Johnson, S.), dated July 3, 2008, as granted the petitioner's motion for summary judgment on the petition and directed dismissal of their counterclaims, without prejudice, and (2) so much of a decree of the same court dated August 5, 2008, as, upon the order, in effect, is in favor of the petitioner and against them granting the petition, declaring that the election was valid, and dismissing their counterclaims, without prejudice, and the petitioner cross-appeals from (1) so much of the order as, upon directing the dismissal of the counterclaims asserted by Joel Berk and Harvey Berk, did so "without prejudice," and (2) so much of the decree, as, upon the order, and upon dismissing the counterclaims, did so "without prejudice."

Ordered that the cross appeals are dismissed, as the petitioner is not aggrieved by the portions of the order and the decree cross-appealed from (see CPLR 5511); and it is further,

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the decree is reversed insofar as appealed from, on the law, the petitioner's motion for summary judgment on the petition is denied, the counterclaims are reinstated, and the order is modified accordingly; and it is further,

Ordered that one bill of costs is awarded to Joel Berk and Harvey Berk, payable by the petitioner personally.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of the decree (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are

brought up for review and have been considered on the appeal from the decree (*see* CPLR 5501 [a] [1]).

In 1982 Irving Berk (hereinafter the decedent), an extremely successful businessman who founded the Berk Trade and Business School (hereinafter the School), executed a will. In his will, the decedent named his two sons, Joel Berk and Harvey Berk, as the co-executors of his estate.

Over time, the decedent's health began to fail. His physical condition deteriorated to the point that he required a wheelchair to ambulate. He also suffered from memory loss, and often became confused.

In 1997 the petitioner, a then-40-year-old woman who immigrated to this country from China in 1996, was hired as the decedent's live-in caretaker. The decedent, 91 years old at the time, became totally dependent on the petitioner, who was constantly with him.

According to an associate of the decedent's, who was frequently with the petitioner and the decedent, on numerous occasions the petitioner shoved and screamed at the decedent, causing him to become "tearful." In addition, according to a friend of the decedent's, the decedent told him, in confidence, that he was "afraid" of the petitioner, as she would hit him, scratch his face, and scream at him.

In April 2005 the decedent, whose mental faculties had steadily declined in the years immediately preceding that time, and who would occasionally be unable to recognize his sons and friends, was diagnosed with dementia by a physician who examined him in connection with a contemplated guardianship proceeding. That physician opined that the decedent's mental state was such that the decedent was "incapable of . . . enter-[ing] into binding contracts." In addition, the decedent's long-time primary-care physician, who examined the decedent on several occasions around this time, opined that the decedent's mental state was such that the decedent was "incapable of properly managing . . . his . . . social . . . affairs."

On June 17, 2005, the petitioner and the decedent, then 47 years old and 99 years old, respectively, were married in a ceremony at the New York City Clerk's Office. According to one of the decedent's associates, who saw the petitioner and the decedent that day at the School, the decedent, who had been dressed up in a suit and tie, did not appear to be "lucid or aware of his circumstances."

The petitioner and the decedent never told the decedent's sons, friends, or associates about the wedding. The petitioner

and the decedent also never said or did anything that would have given the decedent's sons, friends, or associates any indication that the petitioner and the decedent had been married. For example, according to one of the decedent's friends, who saw the petitioner and the decedent together almost every day, the petitioner and the decedent, who never wore a wedding band, never displayed any affection towards each other.

On June 16, 2006, the decedent died. The day before the decedent's funeral, the petitioner, while riding in a car with the petitioner's sons to the funeral home, finally informed them that she and the decedent had been married.

When the decedent died, he left an estate valued in excess of five million dollars. The sole beneficiaries under his will were his sons and four of his grandchildren. The decedent never amended his will so as to make the petitioner a beneficiary.

On or about December 29, 2006, after the decedent's will was filed for probate, the petitioner petitioned the Surrogate's Court to determine the validity of her right to take an elective share of the decedent's estate. In their answer, the decedent's sons asserted certain counterclaims against the petitioner. The petitioner moved for summary judgment on the petition. In an order dated July 3, 2008, the Surrogate's Court, upon finding, inter alia, that no issues of fact existed regarding the petitioner's status as the decedent's surviving spouse, granted the petitioner's motion.

Specifically, the Surrogate's Court determined that the petitioner demonstrated her entitlement to judgment as a matter of law by establishing that she was the decedent's surviving spouse at the time of the decedent's death (see EPTL 5-1.1-A [a]).

However, a triable issue of fact exists as to whether the petitioner forfeited the statutory right of election (see *Campbell v Thomas*, 73 AD3d 103 [2010] [decided herewith]). In opposing the petitioner's motion for summary judgment on the petition, the decedent's sons tendered evidence from which a trier of fact could properly determine that the petitioner, "knowing that a mentally incapacitated person [was] incapable of consenting to a marriage, deliberately [took] unfair advantage of the incapacity by marrying that person for the purpose of obtaining pecuniary benefits that become available by virtue of being that person's spouse, at the expense of that person's intended beneficiaries" (*Campbell v Thomas*, 73 AD3d 103, 121 [2010]). Should the trier of fact so determine, equity will intervene to prevent the petitioner from becoming unjustly enriched from her wrongdoing, as a

court cannot "allow itself to be made the instrument of wrong" (*id.* at 2, quoting *Hogan v Supreme Ct. of State of N.Y.*, 295 NY 92, 96 [1945], quoting *Baldwin v City of New York*, 42 Barb 549, 550 [1864], *affd* 45 Barb 359 [1865]). Accordingly, the petitioner is not entitled to summary judgment on the petition.

Furthermore, under the circumstances, the Surrogate's Court should not have dismissed the counterclaims (*cf. Skyline Enters. of N.Y. Corp. v Amuram Realty Co.*, 288 AD2d 292, 293 [2001]). Covello, J.P., Santucci, Chambers and Lott, JJ., concur.

Motion by the respondent-appellant, inter alia, to strike stated portions of the appellants-respondents' reply brief on appeals and cross appeals from an order of the Surrogate's Court, Kings County, dated July 3, 2008, and a decree of the same court dated August 5, 2008, on the ground that they raise additional issues not raised in the main brief on appeal. By decision and order on motion of this Court dated September 14, 2009, that branch of the motion which was to strike stated portions of the subject reply brief was held in abeyance and referred to the panel of justices hearing the appeal and cross appeal for determination upon the argument or submission thereof.

Upon the papers filed in support of the motion, upon the papers filed in opposition thereto, and upon the submission of the appeals and cross appeals, it is

Ordered that the motion is granted to the extent that point IIA on pages 10 through 15 of the appellants-respondents' reply brief is deemed stricken, point IIA on pages 10 through 15 of the appellants-respondents' reply brief has not been considered in the determination of the appeals or the cross appeals, and the motion is otherwise denied. Covello, J.P., Santucci, Chambers and Lott, JJ., concur.