■ TERENCE M. O'NEIL, Respondent, v PEEKSKILL FACULTY ASSOCIATION LOCAL No. 2916 et al., Appellants.—In an action to recover damages for libel, the defendants appeal from (1) an order of the Supreme Court, Nassau County (Lockman, J.), entered January 25, 1988, which denied their motion to renew their motion for summary judgment which had previously

been denied by order of the same court, entered July 2, 1985, (2) an order of the same court, dated May 18, 1988, which denied their motion to set aside a jury verdict and for judgment as a matter of law, and (3) a judgment of the same court, entered June 2, 1988, which, upon a jury verdict, is in favor of the plaintiff and against them in the principal sum of $800,000.

Ordered that the appeals from the orders are dismissed; and it is further

Ordered that the judgment is reversed, on the facts and as an exercise of discretion, with costs, and a new trial is granted on the issue of damages only, unless within 20 days after service upon the plaintiff of a copy of this decision and order, with notice of entry, the plaintiff shall serve and file in the office of the Clerk of the Supreme Court, Nassau County, a written stipulation consenting to reduce the verdict as to damages to the sum of $430,000 ($130,000 for compensatory damages, and $300,000 for punitive damages) and to the entry of an amended judgment in the principal sum of $430,000, accordingly; in the event that the plaintiff so stipulates, then the judgment, as so reduced and amended, is affirmed, without costs or disbursements.

The appeals from the intermediate orders must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the orders are brought up for review and have been considered on the appeal from the judgment *(see,* CPLR 5501 [a] [1]).

Upon our review of the record, we find that the evidence adduced at trial amply supports the jury's determination that the defendants issued a press release falsely accusing the plaintiff of uttering a racial slur during contract negotiations between the Peekskill Faculty Association and the Peekskill School District. Moreover, after engaging in the "independent review" process constitutionally mandated by the plaintiff's status as a limited purpose public figure *(see, Mahoney v Adirondack Publ. Co.,* 71 NY2d 31, 39; *see also, Harte-Hanks Communications v Connaughton,* 491 US —, 109 S Ct 2678; *New York Times Co. v Sullivan,* 376 US 254), we discern sufficient proof from which the jury could have determined by clear and convincing evidence that the defendants issued the press release with actual malice.

More specifically, the trial testimony, when reviewed in conjunction with certain facts previously deemed admitted for

trial pursuant to CPLR 3212 (g), established that the plaintiff never uttered the words attributed to him in the press release and further established that the press release materially mischaracterized the status of the contract negotiations as they existed immediately prior to the alleged utterance of the racial slur. Additionally, there was ample testimony in the record supporting the conclusion that the individual defendant to whom the alleged racial slur was purportedly directed, as well as the defendants who subsequently assisted in composing and disseminating the press release, knew that no racial slur had been made or entertained serious doubts with respect to its utterance by the plaintiff. Further, the record contains evidence from which the jury could have concluded that the defamatory accusations in the press release were issued by the defendants in order to achieve a decisive advantage in what had previously been protracted and difficult contract negotiations.

In light of the foregoing, and considering the "manner in which the defendants appear to have attempted * * * to gain an advantage in the labor negotiations" by issuing the press release (O'Neil v Peekskill Faculty Assn., 120 AD2d 36, 43), the plaintiff established by clear and convincing evidence that the defendants published a false and defamatory statement with actual malice or with reckless disregard of whether or not the statement was true.

As was previously determined by the Supreme Court, Nassau County, in an order entered July 2, 1985, which was affirmed by this court (see, O'Neil v Peekskill Faculty Assn., supra), it had been established as a fact for the purposes of trial that the alleged slur attributed to the plaintiff in the press release had never been made. The record reveals that in opposition to the plaintiff's cross motion made in 1985 pursuant to CPLR 3212 (g) to deem certain facts established for trial—among them the assertion that the plaintiff never made the alleged slur as recounted in the press release—the defendants "submitted no affidavits by persons with personal knowledge of the facts" (O'Neil v Peekskill Faculty Assn., supra, at 47; emphasis added).

The defendants do not seriously contend on this appeal that so much of the order dated July 2, 1985, as deemed the plaintiff's assertion with regard to the racial slur accusation admitted by the defendants, was in error. They focus their challenge on the Supreme Court's denial of their motion to "renew", made over two years after that ruling.

The most ostensibly probative documentation submitted in

support of the motion to "renew" consisted of deposition testimony given by the defendant to whom the alleged slur was purportedly directed, in which that defendant alleged that the plaintiff had, in fact, made the remark set forth in the press release. No reasonable explanation was provided as to why those allegations were not brought to the attention of the court in 1985. Moreover, we find unpersuasive the belatedly proffered excuse that counsel reasonably believed that an affidavit from someone with personal knowledge of the incident "was not legally required" in opposition to the plaintiff's cross motion (cf., Mgrditchian v Donato, 141 AD2d 513). Therefore, the Supreme Court did not improvidently exercise its discretion in the defendants' motion to "renew".

However, the awards of compensatory and punitive damages made by the jury in the amounts of $200,000 and $600,000, respectively, were excessive to the extent indicated. There was evidence from which the jury could have concluded that, by virtue of the defendants' tortious conduct, the plaintiff was deprived of a $115,000 fee when his firm, which had been previously retained by the City of Peekskill, was removed by the city from a discrimination suit referred to by the parties as the "Kirkland" matter. The city's Corporation Counsel testified in this respect that the plaintiff's firm was removed from the "Kirkland" matter because the city was "unwilling to fight a claim of discrimination" with someone who could possibly be accused of discrimination. Additionally, there was further testimony that the plaintiff's firm was similarly deprived of a retainer from the City of Peekskill in the amount of $15,000. Reviewing the foregoing, it is apparent that the evidence supports a compensatory award of $130,000. Further, a reduction of the award of $600,000 for punitive damages to $300,000 is warranted under the circumstances.

We have reviewed the defendants' remaining contentions and find them to be without merit. Mollen, P. J., Mangano, Thompson and Spatt, JJ., concur.