■ EMPIRE MAGNETIC IMAGING, INC., Respondent, v COMPREHENSIVE CARE OF N. Y., P. C., Appellant. [705 NYS2d 652] —In an action to recover damages for breach of contract and upon an account stated, the defendant appeals, as limited by its brief, from so much of (1) an order of the Supreme Court, Kings County (Bernstein, J.), dated June 9, 1998, as granted that branch of the plaintiff's motion which was for partial summary judgment on its cause of action to recover on an account stated based upon services rendered by the plaintiff in administering magnetic resonance imaging tests and denied its cross motion to dismiss the complaint, and (2) a judgment of the same court, entered July 29, 1998, as, upon severing the plaintiff's remaining causes of action for trial, is in favor of the plaintiff and against it in the principal sum $55,700.

Ordered that the appeal from so much of the order as granted that branch of the plaintiff's motion which was for summary judgment on its cause of action to recover on an account stated for magnetic resonance imaging tests it performed and denied that branch of its cross motion which was to dismiss that cause of action is dismissed; and it is further,

Ordered that the order is affirmed insofar as reviewed; and it is further,

Ordered that the judgment is reversed insofar as appealed from, that branch of the plaintiff's motion which was for summary judgment on its cause of action to recover on an account stated for magnetic resonance imaging tests it performed is denied, and the order dated June 9, 1998, is modified accordingly; and it is further,

Ordered that the appellant is awarded one bill of costs.

The appeal from so much of the intermediate order as granted that branch of the plaintiff's motion which was for summary judgment on its cause of action to recover on an ac-

count stated for magnetic resonance imaging tests it performed and denied its cross motion to dismiss that cause of action must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (*see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from that portion of the order are brought up for review and have been considered on the appeal from the judgment (*see,* CPLR 5501 [a] [1]).

The plaintiff Empire Magnetic Imaging, Inc. (hereinafter EMI), had a verbal agreement with the defendant Comprehensive Care of New York (hereinafter CCNY), to administer magnetic resonance imaging (hereinafter MRI) tests to clients CCNY referred to it. CCNY refused to pay EMI on the ground that EMI, which is not a licensed professional corporation, engaged in the unauthorized practice of medicine by allegedly employing radiologists to interpret the MRIs and split its fees with the radiologists. EMI commenced this action to recover, *inter alia,* on an account stated and was granted partial summary judgment on that cause of action. We reverse.

There are disputed facts regarding the nature of the parties' contractual obligations, and the extent and nature of the payments EMI claims are due from CCNY which preclude the granting of judgment as a matter of law to any party (*see,* CPLR 3212 [b]; *Zuckerman v City of New York,* 49 NY2d 557, 562).

While the dissent is correct in observing that certain invoices submitted in support of EMI's motion for partial summary judgment are for services which do not include fees for readings by radiologists, this evidence hardly settles the question of the exact nature and extent of the parties' oral agreement. For example, of the numerous weekly invoices submitted by the plaintiff, only 13 specifically state that they do not include fees for readings by radiologists. On those invoices, the fees for the MRI tests alone are listed as $200, $240, or $290, depending upon the type of MRI which was performed. Other invoices submitted by the plaintiff list fees incurred for MRI readings and correspond by date to the invoices for fees for imaging only. Those invoices recite fees for readings at rates varying from $65 to $75. Assuming that we were to combine each MRI fee for a particular patient with the corresponding reading fee, the fees should range from $265 to $370. However, those invoices in the record which actually combine the two types of fees, seek fees in the sums of $200, $300, and $350. Thus, there is no uniformity in the fee scale for the various types of MRI services EMI performed. Nor is there any clear indication

whether the reading fees charged in the combined invoices corresponded to reading fees listed in the invoices where those charges were billed separately. On this record, the exact fees charged for either MRI tests or readings by radiologists cannot be determined. Accordingly, it would be premature to grant partial summary judgment to the plaintiff on its cause of action to recover for the fees billed for the MRI services it rendered.

Furthermore, the affidavits of the two radiologists who read the MRIs fail to clarify the issue. Neither affidavit offers specific information regarding the exact nature of the radiologists' billing arrangements with the plaintiff, the duration of those arrangements, if any, or the number of readings each radiologist performed. Indeed, the affidavit of one of the radiologists that the combined billing arrangement was merely a matter of convenience, directly contradicts the defendant's claim that there was no clear billing arrangement, thus raising, instead of resolving a question of fact.

The unanswered questions as to the nature and extent of the parties' oral agreement negate any claim by the plaintiff that it is entitled to judgment as a matter of law for the charges it billed for MRI testing only. This is not to say that the plaintiff will be precluded from recovering these charges at trial. We merely conclude that at this juncture there are questions of fact which preclude the granting of summary judgment.

In light of our determination, it is unnecessary to reach the appellant's remaining contentions. Joy, J. P., Sullivan and Luciano, JJ., concur.

Krausman, J., concurs in part and dissents in part and votes to dismiss the appeal from so much of the order as granted that branch of the plaintiff's motion which was for summary judgment on its cause of action to recover on an account stated for magnetic resonance imaging tests it performed and denied that branch of the cross motion which was to dismiss that cause of action, affirm the order insofar as reviewed, and affirm the judgment, with the following memorandum: I believe that the Supreme Court properly permitted the plaintiff to recover fees for performing magnetic resonance imaging (hereinafter MRI) tests, and would affirm the judgment in favor of the plaintiff on that cause of action.

The plaintiff Empire Magnetic Imaging, Inc. is a domestic corporation engaged in the business of administering mobile MRIs. Technicians employed by the plaintiff perform the MRI tests in trucks which are sent to various health care facilities. It is undisputed that technicians are not required to possess

medical licenses to perform MRIs. In 1995, the plaintiff entered into an oral agreement with the defendant to perform MRI tests for a set fee per MRI. According to the plaintiff, the MRI films prepared by its technicians were initially read and interpreted by radiologist Dr. Leena Doshi, who supplied diagnostic reports and billed the defendant directly for her work. However, after the defendant allegedly complained about the cost of Dr. Doshi's services, the plaintiff's president introduced the defendant's principal to radiologist Dr. Michael Katz. Although the defendant allegedly hired Dr. Katz to read the MRIs, the plaintiff claims that, for the sake of convenience, it agreed to bill the defendant for Dr. Katz's services. The plaintiff maintains that all fees collected for Dr. Katz's services were turned over entirely to Dr. Katz.

In July 1996, the plaintiff commenced this action against the defendant seeking to recover the unpaid balances of $84,200 it had billed the defendant for MRIs administered between May 17, 1995, and October 6, 1995, and $13,845 for radiologist reading fees from May 2, 1995 to August 23, 1996. Of this total, i.e., $98,046, the plaintiff admitted that the defendant had paid $5,500 leaving the balance of $92,545. The plaintiff subsequently moved, *inter alia,* for partial summary judgment, contending that it was entitled to recover the unpaid balance due on its invoices for administering the MRIs and reading and interpreting the films.

In support of its motion, the plaintiff submitted documentary evidence including work logs which indicated the name of each patient for which it had provided MRI services, the date such services were performed, and the nature of the services provided. The plaintiff also produced copies of over 30 invoices which billed the defendant for services provided to patients on specified dates. The invoices identified the type of MRI performed on each patient, and the date services were provided. Of the invoices in the record, 13 state that they do not include MRI reading fees and they bill a flat rate of either $240 or $290 per MRI in almost all instances. In a few instances, where a second type of MRI was performed on the same patient, the plaintiff billed the defendant $200 for the second MRI. Other invoices, which stated that they included reading fees, billed at a higher rate of either $300 or $350 per MRI. A third category of invoices, billing solely for MRI readings, charged the defendant a flat rate of either $65 or $75 per reading.

The defendant cross-moved to dismiss the complaint on the ground that the agreement was unenforceable because the plaintiff, an unlicensed business corporation, engaged in the

unauthorized practice of medicine by hiring radiologists to read the MRI reports and splitting fees with those radiologists in violation of various provisions of the Public Health Law and the Education Law. In support of its claim that the plaintiff was illegally seeking to recover fees for medical services, the defendant's business manager submitted an affidavit stating that the parties' oral agreement permitted the plaintiff to charge a preestablished fee for both performing and reading the MRIs, and that some of the plaintiff's invoices expressly included reading fees. This affidavit also criticized the quality of the MRI reports, and claimed that the plaintiff had double-billed the defendant for readings after sending some films to a second radiologist for new reports.

Affidavits from the two radiologists who read the MRI films confirmed that no fee-splitting occurred. The first radiologist, Dr. Leena Doshi, averred that she had been hired by the defendant, and that she billed the defendant for her work. The second radiologist, Dr. Michael Katz, averred that the defendant asked him to prepare MRI reports, and that "for the sake of convenience" it was agreed that the plaintiff would bill the defendant for his services.

The plaintiff also emphasized in its reply papers that it was undisputed that the defendant had received payments for the MRIs from its patients or their insurance carriers. The plaintiff contended that prohibiting it from recovering fees for its work would create a situation where the defendant would "reap a windfall in the form of payments they collected from these patients and their carriers". The plaintiff concluded that at minimum, it should be awarded partial summary judgment allowing it to recover the balances due for the 13 invoices which specifically stated that they did not include fees for MRI readings. These invoices total $55,700.

The Supreme Court concluded that there was an issue of fact as to whether the plaintiff had engaged in the illegal practice of medicine because there was conflicting evidence as to which party contracted for radiologists to read the MRIs. However, the court found that the plaintiff was entitled to partial summary judgment in the sum of $55,700 because the contract could be severed in order to separate the illegality, if any, from the indisputable legal obligation.

On appeal, the defendant continues to maintain that its contract with the plaintiff was illegal because the plaintiff paid radiologists to read the MRI films and prepare diagnostic reports, and the contract is therefore unenforceable in its entirety. The defendant further argues that where such an agree-

ment is illegal, the court cannot allow recovery on a theory of unjust enrichment, and must leave the parties where their own acts have placed them.

Initially, I note that the plaintiff may not recover fees for medical services provided by the radiologists who read and interpreted the MRI films. Education Law § 6522 provides that "[o]nly a person licensed or otherwise authorized under this article shall practice medicine". Moreover, both the public policy of this State and Education Law § 6509-a prohibit arrangements for the splitting of fees between physicians and nonlicensed entities (see, LoMagno v Koh, 246 AD2d 579). These prohibitions have been held to apply where a corporation "brokers" medical services by selecting and hiring doctors to conduct medical examinations without obtaining the appropriate agency licenses, and then splits the fees with those physicians (see, Accident Claims Determination Corp. v Durst, 224 AD2d 343). In the case at bar, compelling evidence has been submitted, consisting of the unrefuted affidavits of the two radiologists who read the subject MRI films, to establish that the defendant selected and hired the radiologists, and that the plaintiff billed the defendant for Dr. Katz's services merely as an accommodation to the doctor, and not as part of a true fee splitting arrangement (see, Charlebois v Weller Assocs., 136 AD2d 214, affd 72 NY2d 587). Although there is no evidence of fee splitting, I would nevertheless find that to the extent that the plaintiff seeks to directly recover fees which are due to Dr. Katz for reading MRI films and preparing diagnostic reports, its claim is barred by the statutory prohibition against the unauthorized practice of medicine.

However, I believe that the Supreme Court properly allowed the plaintiff to recover fees for the MRI services provided by its technicians. In Artache v Goldin (133 AD2d 596, 599), this Court stated that "where an agreement consists in part of an unlawful objective and in part of lawful objectives, the court may sever the illegal aspects and enforce the legal ones, so long as the illegal aspects are incidental to the legal aspects and are not the main objective of the agreement * * * [c]ourts will be particularly ready to sever the illegal components and enforce the other components of a contract where the injured party is less culpable and the other party would otherwise be unjustly enriched by using his own misconduct as a shield against otherwise legitimate claims". Applying these principles in Artache, we found that the plaintiff, as a nonprofessional employee in the defendant's dental practice, could be found less culpable than the defendant for an illegal fee splitting ar-

rangement, and should not be precluded from recovering for services rendered by her in connection with the defendant's dental practice.

Similarly, the illegal aspects of the agreement at bar can be severed from the main objective of the contract, which was to arrange for MRI services in exchange for a fee. The plaintiff's technicians were legally permitted to perform such services without a medical license, and the provision of imaging services can be readily separated from the improper billing for radiologist's fees. Indeed, as this Court has observed, "[r]ather than consider the illegal contract as void in toto, the better view is to sever the offending provision and validate the basic agreement", permitting a cause of action to be maintained for breach of the valid remainder of the contract (*Caruso v Allnet Communications Servs.*, 242 AD2d 484, 485).

The defendant's argument that the contract is completely unenforceable and that the complaint should be dismissed in its entirety relies primarily upon this Court's decision in *United Calendar Mfg. Corp. v Huang* (94 AD2d 176). In that case, the plaintiff was an unlicensed business corporation which hired doctors and dentists to treat patients at a medical center in Brooklyn. Under the terms of the employment arrangement between the plaintiff and the doctors and dentists it hired, the plaintiff was to receive 30% of the total fees they received for their services. In May 1982, two physicians terminated their employment with the plaintiff, and sent the patients they had treated announcement cards advising them of the physicians' new address. The plaintiff responded by commencing an action against the two physicians, seeking an injunction restraining them from soliciting or attempting to render medical services to any of the corporation's patients and money damages. This Court dismissed the complaint of the plaintiff corporation, noting that the plaintiff was not authorized to practice medicine, and had no legal claim to any of the patients treated at its facility. We further found that since the plaintiff's cause of action was based upon a fee-splitting arrangement which was prohibited by law, it could not seek the aid of the courts in its effort to enforce the illegal contract. In this regard, we observed that " '[i]t is the settled law of this State (and probably of every other State) that a party to an illegal contract [in this case the plaintiff corporation] cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose' " (*United Calendar Mfg. Corp. v Huang,* 94 AD2d 176, *supra*, at 180, quoting *Stone v*

*Freeman,* 298 NY 268, 271; *see also, Barker v Kallash,* 91 AD2d 372, *affd* 63 NY2d 19; *Braunstein v Jason Tarantella, Inc.,* 87 AD2d 203). The denial of relief to the plaintiff in such a case is not based on any desire of the courts to benefit a particular defendant. That the defendant may profit from the court's refusal to intervene is irrelevant. What is important is that the policy of the law be upheld. Where the parties' arrangement is illegal "the law will not extend its aid to either of the parties * * * or listen to their complaints against each other, but will leave them where their own acts have placed them" (*Braunstein v Jason Tarantella, Inc., supra,* at 207).

In sharp contrast to *United Calendar Mfg. Corp. v Huang,* where the plaintiff was in clear violation of State laws for having its own patients when it was not licensed to practice medicine, here the arrangement between the parties primarily required the plaintiff to provide MRI services, which its technicians could legally do without a license. Moreover, the general rule that illegal contracts are unenforceable does not always apply to contracts which violate statutory provisions. "If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied" (*Rosasco Creameries v Cohen,* 276 NY 274, 278).

Indeed, in a case with significant similarities to the case at bar, this Court did not deny the plaintiff the right to recover for medical testing services performed for the defendant physician's patients. In *Katz v Zuckermann* (126 Misc 2d 135, *affd* 119 AD2d 732), the plaintiffs, technicians in "EEG" and "ECHO" testing, and the defendant, a licensed physician, entered into an oral agreement whereby the parties were to contribute jointly to the purchase of EEG and ECHO testing machines. The plaintiff technicians were to administer the tests, and the parties were to divide the money received for the tests administered by the plaintiffs. When the plaintiffs sued the defendant for breach of this agreement, the defendant argued that the complaint should be dismissed because the plaintiffs were unlicensed technicians, and the agreement was thus an illegal fee splitting arrangement. The Supreme Court agreed that the plaintiffs could not recover on a breach of contract theory because the agreement called for them to receive a percentage of the fees which the doctor charged his patients for the testing services. However, the Supreme Court found that the plaintiffs were not precluded from recovery on

an unjust enrichment theory, reasoning that "the court will not permit the doctor to disavow his obligations based upon his own wrongdoing where he clearly has received valuable services. As a matter of fact, the defendant has received monetary compensation for the services performed exclusively by the plaintiff. The doctor, who apparently entered into an agreement, whether written or oral, not knowing of its illegality, is charged with a higher duty of knowledge and should not be permitted to assert the excuse of ignorance of the law to avoid his obligations" (*Katz v Zuckermann, supra,* at 139). In affirming the Supreme Court's determination, this Court observed that "[w]hile the courts will generally not enforce illegal contracts, an exception to the rule is recognized where, as here, the contract is merely prohibited by statute (*malum prohibitum*), and is not criminal in nature * * * under the circumstances of this case [the Supreme Court] properly found that the plaintiffs, as nonprofessionals, were less culpable than the defendant, at whom the prohibitions of Education Law § 6509-a are directed, and accordingly they should not be precluded from recovering under a theory of unjust enrichment" (*Katz v Zuckermann,* 119 AD2d, *supra,* at 733).

Here, the plaintiff legally performed valuable testing services for the defendant, and the defendant received payment for the plaintiff's services from its patients and their insurance carriers. Moreover, the plaintiff, which provides nonprofessional services, can be considered less culpable than the defendant for any illegal aspects of the agreement. Under these circumstances, I agree with the Supreme Court's conclusion that the plaintiff should be permitted to recover for its MRI services.

Although the Majority seems to agree that the plaintiff may ultimately be entitled to recover some fees for the services it provided, the Majority expresses concern that partial summary judgment is premature because there are some variations in the fees charged by the plaintiff for each MRI, and because the fees charged solely for imaging services, when combined with reading fees, do not precisely match the sum charged per patient on those invoices which combine both services. However, it should be noted that the defendant, in opposing the plaintiff's motion and in cross-moving for summary judgment, never pointed out any fee variations in the plaintiff's invoices, and did not claim that an issue of fact existed regarding the sums charged for imaging services. Rather, the main thrust of the defendant's cross motion for summary judgment was that the agreement between the parties was tainted by il-

legality, and that the plaintiff should be entirely precluded from recovery because it had improperly engaged in the practice of medicine. Although the affidavit of the defendant's business administrator contained a brief objection to the quality of the MRI reports prepared by the radiologists, and suggested that the defendant had been double-billed for readings when certain films were sent to a second radiologist for new reports, he never questioned the fees charged by the plaintiff on those invoices which segregated reading fees from imaging fees. Thus, the record is absolutely devoid of evidence of a genuine dispute over the imaging fees charged by the plaintiff.

It is also highly significant that the defendant has never disputed that it billed its patients for the MRIs performed by the plaintiff's technicians, and that it has received payment for these services from its patients and their insurance carriers. It is therefore apparent that the defendant found the plaintiff's invoices sufficient to justify charging its patients and their insurers for MRI services. Considering the fact that the defendant billed its patients for the plaintiff's services and was reimbursed for them while at the same time withholding payment to the plaintiff, the Majority's position that the plaintiff should be denied partial summary judgment for its imaging services is difficult to justify. Given these circumstances, I believe that the Supreme Court properly allowed the plaintiff to recover the balance due on the 13 invoices which seek payment solely for imaging services.