■ CRISTINA LANZA, Appellant, v DAVIDE CARBONE, Respondent. [13 NYS3d 472]—

Appeal from an order of the Supreme Court, Queens County (David Elliot, J.), entered August 21, 2013. The order, insofar as appealed from, denied, without a hearing, that branch of the plaintiff's motion which was, in effect, for a money judgment for arrears due and owing under a certain provision of the parties' separation agreement dated December 1, 2008, which was incorporated, but not merged, into the judgment of divorce entered December 20, 2012, requiring the defendant to pay her the sum of $30,000 in exchange for her interest in a business that the parties co-owned at the time of the marriage.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, that branch of the plaintiff's motion which was, in effect, for a money judgment for arrears due and owing under a certain provision of the parties' separation agreement dated December 1, 2008, which was incorporated, but not merged, into the judgment of divorce entered December 20, 2012, requiring the defendant to pay her the sum of $30,000 in exchange for her interest in a business that the parties co-owned at the time of the marriage is granted, and the matter is remitted to the Supreme Court, Queens County, for the entry of an appropriate money judgment in favor of the plaintiff and against the defendant in accordance herewith.

The parties married on September 17, 2007. Approximately 14 months later, on December 1, 2008, the parties entered into a separation agreement in which they agreed, among other things, to live separate and apart, and to be free from harassment or interference "relating to each party's immigration status." At the time they entered into the agreement, the parties were co-owners of a business, Asterisko, LLC, and they agreed that it was valued at approximately $60,000. The separation agreement contained a provision entitled "Marital Interest in Business," which required the plaintiff, Cristina Lanza, to transfer her interest in the business to the defendant, Davide Carbone. As consideration for transferring her interest in the business, the defendant was required to pay the plaintiff $30,000. The provision of the separation agreement entitled "Marital Interest in Business" further provided, in pertinent part, as follows: "[the $30,000] payment shall be made [over] a term of five (5) years, commencing ninety (90) days after the date [on which the defendant] obtains an E-2

Dependent Immigration Visa from the U.S. Consulate of Milan, Italy, or the signing of the documents necessary to effectuate the [transfer of the business], whichever later occurs. [The plaintiff] hereby covenants and agrees to (i) fully cooperate with [the defendant] in order to sponsor [him] for an E-2 Dependent Visa, or other similar Visa, to the extent it allows [him] to legally work in the United States, and (ii) to provide [necessary information and documents]."

Further, the plaintiff agreed that revocation or termination of the defendant's E-2 dependent visa (also termed a derivative visa), or any other visa that he obtained by virtue of her sponsorship, due to her "actions, neglect or failure to act" within three years from the date of the separation agreement would constitute a material breach of the agreement. The separation agreement denominated the described breach as a "Visa Breach."

Significantly, if the defendant filed for divorce before the expiration of the three-year period, and thereby made himself ineligible for a visa as the plaintiff's spouse, her obligation to maintain the visa would terminate, but the defendant would still be obligated "to pay the equitable distribution of the value of the [business]." Similarly, if the plaintiff lost her visa or her ability to sponsor the defendant for a visa through no fault or action of her own, the defendant would still be obligated "to pay the equitable distribution of the value of the [business]." The separation agreement also provided, in pertinent part, that "[i]f any provision of this Agreement should be held to be invalid or unenforceable under the laws of any State, country or other jurisdiction, the remainder of this Agreement shall continue in full force and effect."

Contemporaneously with the execution of the separation agreement, the plaintiff transferred her 50% interest in the business to the defendant. Sixteen months later, on April 26, 2010, the defendant obtained an E-2 dependent visa (hereinafter the visa). Thus, pursuant to the terms of the separation agreement, the defendant's first payment of $3,000 became due 90 days later. However, as of July 29, 2010, more than 90 days after the defendant obtained the visa, he had paid only $2,700. He made additional payments to the plaintiff, but he failed to pay the rest of the $30,000 due under the terms of the separation agreement.

In May 2012, more than two years after the defendant obtained the visa, the plaintiff commenced an action for a divorce and ancillary relief based upon the parties living separate and apart pursuant to the separation agreement. A judg-

ment of divorce was entered on December 20, 2012. The separation agreement was incorporated, but not merged, into the judgment, and the parties were directed to comply will all legally enforceable terms and conditions of the agreement.

Thereafter, the plaintiff moved, inter alia, in effect, for a money judgment for arrears due and owing under the provision of the separation agreement requiring the defendant to pay her the sum of $30,000 in exchange for her interest in the business that the parties co-owned at the time of the marriage. In support of her motion, the plaintiff averred that the defendant had, at that point, paid $3,900 toward the agreed-upon total of $30,000, but failed to make any additional payments.

In opposition to the plaintiff's motion, the defendant argued, among other things, that his failure to pay was not willful, and that he was "materially unable to pay the $14,100" balance that was due under the agreement at that time. The defendant also cross-moved to vacate so much of the judgment of divorce as required him to pay the plaintiff sums due under the separation agreement, on the ground that the attorney who represented him during the negotiation and execution of the separation agreement had a conflict of interest based upon his previous representation of the plaintiff in connection with her own visa application.

In the order appealed from, the Supreme Court denied, without a hearing, the plaintiff's motion and the defendant's cross motion based upon its determination that the subject terms of the separation agreement constituted a "presumed mutual plot to assist [the defendant]—in exchange for a sum of money—in obtaining [legal immigration status], even though the parties were living separate and apart—in contemplation of divorce." The court found that the subject terms of the separation agreement were not legally enforceable. The plaintiff appeals from so much of the order as denied that branch of her motion which was, in effect, for a money judgment for arrears due and owing under the provision of the parties' separation agreement requiring the defendant to pay her the sum of $30,000 in exchange for her interest in the business that the parties co-owned at the time of the marriage. We reverse the order insofar as appealed from.

Although parties are usually free to chart their own contractual course, that is not the case in certain situations where public policy would be offended (see *Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d 624, 629 [2006]). Further, as a general rule, illegal contracts are unenforceable (see *Village Taxi Corp. v Beltre*, 91 AD3d 92, 99 [2011]; *Matter of Ungar v*

*Matarazzo Blumberg & Assoc.*, 260 AD2d 485, 486 [1999]), and this includes marital agreements for visa sponsorship that unlawfully circumvent United States immigration laws (*see Heilbut v Heilbut*, 297 AD2d 233, 234 [2002]).

Here, the terms and conditions of the separation agreement ostensibly required the plaintiff to assist the defendant in obtaining a visa. Further, in an affidavit submitted in support of her motion, the plaintiff admitted that she stayed in the marriage longer than she wished so that the defendant could obtain an E-2 dependent visa. However, there is no proof that the marriage was a sham, or that any other tribunal or government agency had made such a determination.

More importantly, even if the Supreme Court was correct in determining that certain terms of the separation agreement are illegal and unenforceable, the terms directing the defendant to compensate the plaintiff for transferring her interest in the business to him would nevertheless be severable and enforceable (*see generally Christian v Christian*, 42 NY2d 63, 73 [1977]). Where an agreement consists of an unlawful objective in part and a lawful objective in part, the court may sever the illegal aspect and enforce the legal one, so long as the "illegal aspects are incidental to the legal aspects and are not the main objective of the agreement" (*Donnell v Stogel*, 161 AD2d 93, 97-98 [1990]; *see Carruthers v Flaum*, 365 F Supp 2d 448, 468 [SD NY 2005]; *McCall v Frampton*, 81 AD2d 607, 608 [1981]). Whether a contract is to be enforced in its entirety or is severable is generally a question of intent, "to be determined from the language employed by the parties, viewed in the light of the circumstances surrounding them at the time they contracted" (*Christian v Christian*, 42 NY2d at 73). Moreover, "[c]ourts will be particularly ready to sever the illegal components and enforce the other components of a contract where the injured party is less culpable and the other party would otherwise be unjustly enriched by using his own misconduct as a shield against otherwise legitimate claims" (*Artache v Goldin*, 133 AD2d 596, 599 [1987]; *see Empire Magnetic Imaging v Comprehensive Care of N.Y.*, 271 AD2d 472, 477 [2000]). Here, the separation agreement contained an express provision that the doctrine of severability shall apply should any particular term of the agreement be deemed invalid or unenforceable.

Contrary to the Supreme Court's determination, we do not find that the main objective of the parties' separation agreement was to compensate the plaintiff for remaining in the marriage and thereby helping the defendant obtain a visa (*cf. Don-*

*nell v Stogel*, 161 AD2d at 97). The separation agreement addressed various aspects of the parties' marriage, including distribution of their marital assets. According to the plain language of the separation agreement, the $30,000 payment to the plaintiff constitutes compensation for the transfer of her 50% interest in the business that the parties co-owned at the time of the marriage. Notably, the parties agreed that, even if the visa sponsorship did not come to fruition, the defendant would still be obligated to pay the distribution of the value of the business.

It should be noted that, even if the marriage were proven to be a sham marriage, either party could have sought a divorce, a judgment declaring the nullity of a void marriage (*see* Domestic Relations Law § 140), or an annulment of a voidable marriage (*see id.*), all of which mandate the equitable distribution of assets acquired during the marriage (*see* Domestic Relations Law § 236 [B] [5] [a], [c]; *DeLyra v DeLyra*, 141 AD2d 75, 78 [1988], *affd* 74 NY2d 872 [1989]). Absent a judicial finding, after a hearing, that the money to be transferred to the plaintiff was payment for spousal sponsorship of a visa and nothing more, which would be against public policy and thus unenforceable in court, the terms of the separation agreement dealing with the distribution of assets acquired during the marriage are enforceable, separate and apart from any unenforceable terms. Thus, the terms of the separation agreement governing the transfer of the previously co-owned business in exchange for $30,000 are severable from any terms of the separation agreement which may be unenforceable (*see Christian v Christian*, 42 NY2d at 73; *Taft v Taft*, 156 AD2d 444, 446 [1989]; *Schiff v Schiff*, 270 App Div 845, 846 [1946]; *Filstein v Bromberg*, 36 Misc 3d 404, 415 [Sup Ct, NY County 2012]; *cf. Hartman v Bell*, 137 AD2d 585, 586 [1988]). There is no dispute that the plaintiff transferred her 50% interest in the business to the defendant as required by the separation agreement. Moreover, the defendant failed to demonstrate that he was materially unable to pay the remaining balance then owed to the plaintiff, to wit: $14,100, pursuant to the lawful and enforceable terms of the separation agreement. Thus, the plaintiff was entitled to a money judgment against the defendant for arrears due and owing under the separation agreement. The plaintiff's alternative contention that the Supreme Court's order should be reversed on the equitable ground of unjust enrichment need not be reached in light of our determination.

Additionally, there is no merit to the defendant's argument that the attorney who represented him during the negotiation

and execution of the separation agreement had a conflict of interest based upon his previous representation of the plaintiff in connection with her own visa application. Pursuant to the terms and conditions of the separation agreement, both of the parties specifically waived any claims of a conflict of interest (*see Grovick Props., LLC v 83-10 Astoria Blvd., LLC*, 120 AD3d 471, 474 [2014]), and his contention that there was an undisclosed conflict, where the plaintiff referred clients to the defendant's attorney three years after the separation agreement, is without merit. During the negotiation of the separation agreement and divorce, the plaintiff was represented by her own individual attorney. The fact that the plaintiff, who initially utilized the services of the defendant's attorney in her own immigration visa application, referred him to other persons who needed an immigration attorney three years after he represented the defendant in the separation agreement, where she had her own independent counsel, does not rise to the level of a conflict of interest. Further, there is no evidence that the defendant's attorney colluded with the plaintiff in crafting the terms of the separation agreement.

Accordingly, the Supreme Court should have granted that branch of the plaintiff's motion which was, in effect, for a money judgment for arrears due and owing under the terms of the separation agreement requiring the defendant to pay her $30,000 in exchange for her interest in the previously co-owned business. We note that, pursuant to the terms of the separation agreement, the full $30,000 will become due to the plaintiff on July 29, 2015. There is no dispute that the defendant has paid only $3,900 toward this total, leaving a total balance of $26,100 (the defendant presently owes $21,100 in arrears, and he is obligated to pay an additional $5,000 on July 29, 2015, for a total of $26,100). Thus, we remit the matter for the entry of a money judgment in favor of the plaintiff and against the defendant in the amount of all unpaid arrears due and owing under the provision of the separation agreement requiring the defendant to pay the plaintiff the sum of $30,000 in exchange for her interest in the business that the parties co-owned at the time of the marriage. Dillon, J.P., Leventhal, Chambers and Maltese, JJ., concur.