Tomlex Realty LLC v Moore (2024 NY Slip Op 24248)

[*1]

Tomlex Realty LLC v Moore

2024 NY Slip Op 24248

Decided on September 16, 2024

Civil Court Of The City Of New York, Kings County

Jimenez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on September 16, 2024
Civil Court of the City of New York, Kings County

Tomlex Realty LLC, Petitioners,

against
Jeffrey S Moore, JOHN DOE and JANE DOE, Respondents.

Index No. 327199-23

Kucker Marino Winiarsky & Bittens, LLP
Attn: Lisa Y. Faham, Esq.
747 Third Avenue
12th Floor
New York, New York 10017
lselzer&commat;kuckermario.com
Attorneys for Petitioner — Tomlex Realty LLC
Jeffrey S. Moore
Self-Represented Litigant

Sergio Jimenez, J.

This nonpayment proceeding seeks recovery of the property located at 420 Lexington Avenue, Apartment 7A in Brooklyn, New York 11221 for an alleged failure to pay rent. This proceeding was transferred from the resolution part to the trial part in May of 2024. After an in-person pre-trial conference, the court adjourned the proceeding for trial. The court conducted a trial on September 4, 2024. After the taking of testimony and presentation of evidences, the court then reserved decision.
Testimony and Analysis
Petitioner seeks a judgment of possession for $36,279.10 as all rent due through date. Petitioner called Shalom Kaufman, a manager for Tomlex Realty LLC who owns the property. He credibly testified and authenticated P1 (certified deed), P2 (Multiple Dwelling Registration), P3 (Certified DHCR), P4 (2020 Lease), P5 (2022 lease renewal), P6 (ledger), P7 (5-day notice), P8 (14-day notice). He testified as to the rental debt allegedly owed. Based on the documents and the testimony, it is petitioner's position that the first year of the lease included a "rent concession" of three months that was prorated monthly throughout the course of the entire lease. In other words, instead of three (3) free months, the rent was reduced by the three (3) months [*2]total divided by twelve (12). Petitioner further contends that the concession ended with the first lease. Petitioner then rested.
Respondent, Jeffrey S. Moore, testified on his own behalf. Mr. Moore presented 18 documents, mostly on consent, and the court accepted all except R-6, R-7, R-12, R14 and R18. The crux of his testimony was that after moving into these rent-stabilized premises in early 2021, he believed he was entitled to a preferential rent going forward because he received a "monthly concession" during the entirety of the first lease. He testified to a leaky ceiling from the outset of the tenancy through April 2024. On cross-examination, Mr. Moore admitted that the rent deposit and the first month's rent were all at the non-monthly concession rate. Additionally, questions on cross-examination were raised as to respondent informing the petitioner as to the conditions alleged in his direct testimony. Respondent then rested.
Petitioner, in rebuttal called the same witness, Mr. Shalom Kaufman, who stated that the various riders informed all parties that the concession was only for the first year. On cross-examination he acknowledged that an accounting error caused the petitioner to extend the rent-credit to the respondent past the first lease (where the lease ended in December, the rent credit was still given in January).
In essence, the parties do not have many disputes as to the facts. Both parties agree as to who owns the building, that the building is a 421-a program building, that the subject premises apartment is rent stabilized, the relationship between the parties, which leases have been signed, when they were signed, what payments have been made, what payments have not been made. The parties do have some disputes as to allegations of breaches of the warranty of habitability. However, that issue is secondary to the main philosophical question the parties require the court to resolve: should respondent have a preferential rent or does the reduction in rent offered at the outset of the relationship represent a one-time reduction which extinguishes at the end of the lease?
Preferential rents exist in rent stabilized units as a rent lower than the legal regulated rent. Prior to the passing of the HSTPA, preferential rents could be revoked at the end of a lease. However, these preferential rents then became permanent as to the lifetime of the tenancy with the passing of the HSTPA (RSL §26-511[c][14]). The government agency tasked with overseeing rent stabilization is the Division of Homes and Community Renewal (DHCR). The DHCR publishes fact sheets to inform all interested parties as to the application of their rules. Fact Sheet #40 deals with preferential rents. This fact sheet was amended in May of 2024, at that time it removed any mention of concessions. While the prior fact sheet was heavily relied upon by the Appellate Division, First Department, in various proceedings, those cases relied on a Fact Sheet that no longer exists (Chernett v. Spruce 1209, LLC, 100 AD3d 596 [1st Dept 2021]; Burrows v. 72-25 153rd St., LLC, 215 AD3d 105 [1st Dept, 2023]). Those decisions highlighted the difference between "one-time rent concession that applied to specific month[s]" and "prorated discounts." Here, the rider in the original 2020 lease states that respondent would receive a "monthly credit of $634.75" for 12 months. This prorated "net effective" rate is relevant in the determination of the whether there is a preferential rent or if there is a one-time concession (Bascom v. 1875 Atl. Ave Dev., LLC, 227 AD3d 767 [2d Dept, 2024]). The Bascom Court emphasized the Burrows Court dependence on Fact Sheet #40 to find that concessions earmarked for a particular month or months are appropriate. However, as stated above, the Burrows Court's interpretation of Fact Sheet #40 has lost some of its persuasiveness as it was amended close to 11 months after Burrows was decided and DHCR, in updating their factsheet, [*3]must have known about the Burrows decision. The court also notes that there is no section of the Rent Stabilization Code that deals with concessions, however the legislature has voiced its approval of preserving preferential rents. Here, the petitioner seeks to use semantic distinctions to avoid the legislative intent. It is undisputed that the respondent received a reduced rent for the entirety of the lease. Here, it appears that the rent was a preferential agreement and not a one-time credit.
One important aspect not lost on the court is that the appellate courts have opined positively on the propriety of limited concessions during "final stages of construction" and/or prior to "permanent certificate[s] of occupancy" (Burrows v. 72-25 153rd St., LLC, 215 AD3d 105 [1st Dept, 2023]). Here, there was no final construction and the "concession" was allegedly given due to not a legal or factual change in the status of the property but rather the petitioner's own analysis of the market. Further, petitioner made no showing tying the "concession" to any structural/building condition. These two concessions are fundamentally different. Whereas one stems from changes in the building/unit themselves and are temporary, the other is a self-determination made in furtherance of a single organization's private economic plans. 
Petitioner also argues that the rent reduction rider (page 5 of P3) clearly allows the petitioner to seek the higher rent at the conclusion of the initial lease. Respondent, who admits to signing the rider, counters by saying that he did not know his rights at the time. The court finds that in a contract, where terms are improper/illegal, those terms may be severed by the court (Lanza v. Carbone, 130 AD3d 689 [2d Dept 2015]). Here, upon finding that the above concession was actually a preferential rent, the court strikes the portions of the 2020 lease rider which contradict such a finding. As such, the court finds that the "promotional credit" was, in fact, a preferential rent.
As a secondary point, raised by petitioner, is even if the rent had been a permanent preferential rent, could respondent have waived the preferential aspect of the rent by signing the subsequent lease? Petitioner avers that by signing the renewal lease, with advice of counsel, the respondent waived his rights under rent stabilization to argue the preferential rent. Generally, agreements which set the rent to be charged above the legal regulated rent are void as a matter of public policy (97-101 Realty, LLC v. Sanchez, 66 Misc 3d 30 [App Term 2d, 11th and 13th Jud Dists, 2020]). While DHCR complaints may be withdrawn with prejudice in situations where negotiated settlements with the approval of DHCR or a court of competent jurisdiction have been reached or where the tenant is represented by counsel (9 NYCRR §2520.13), the statute does not explicitly address controversies outside of those complaints. However, that section only outlines DHCR complaints, not a broad range of possible arguments. Here, there is no pending DHCR complaint, only the current litigation, despite the parties engaging in out of court negotiations which never resulted in an actual holdover failure-to-sign-renewal proceeding. As such, even were the court to apply a possible waiver, pursuant to §2520.13, this court never approved such an agreement. As such, the court finds there to be no waiver of the preferential rent.
As respondent was due a preferential rent in the lease following the expired lease, the petition must fail as the predicate notice is improperly seeking rent not due (ShopRite Supermarkets, Inc. v. Yonkers Plaza Shopping, LLC, 29 AD3d 564 [2d Dept, 2006]). Petitioner's defense of warranty of habitability is mooted in the context of this nonpayment but, as it was not pled as a counterclaim, reserved for any future proceeding between the parties.
[*4]Conclusion
For the above reasons, respondent is entitled to a judgment of dismissal, without prejudice to the petitioner's claims of rent under the preferential lease. The parties may appear in the court part within thirty (30) days to pick up their exhibits or they will be destroyed according to court policies. This constitutes the decision and order of the court.
Dated: September 16, 2024
Brooklyn, New York
Sergio Jimenez, JHC