BARBARA VACCARO et al., Appellants, v ST. VINCENT'S MEDICAL CENTER et al., Respondents, et al., Defendant. [898 NYS2d 163]—

In an action, inter alia, to recover damages for medical malpractice, the plaintiffs appeal from (1) an order of the Supreme Court, Richmond County (McMahon, J.), dated December 27, 2007, which granted the motion of the defendants St. Vincent's Medical Center, Lilibeth Rubio-Gonzales, and Dorotea De-Francesco, and the separate motion of the defendants Healthcare Associates in Medicine, P.C., Neuroscience Associates of N.Y., and Sharon Osborn for summary judgment dismissing the complaint insofar as asserted against them, and (2) a judgment of the same court dated February 8, 2008, which, upon the order, is in favor of those defendants and against them dismissing the complaint insofar as asserted against those defendants.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is modified, on the law, by deleting the provision thereof dismissing the complaint insofar as asserted against the defendants St. Vincent's Medical Center, Lilibeth Rubio-Gonzales, Healthcare Associates in Medicine, P.C., Neuroscience Associates of N.Y., and Sharon Osborn; as so modified, the judgment is affirmed insofar as appealed from, those branches of the motion of the defendants St. Vincent's Medical Center and Lilibeth Rubio-Gonzales which were for summary judgment dismissing the complaint insofar as asserted against them and the separate motion of the defendants Healthcare Associates in Medicine, P.C., Neuroscience Associates of N.Y., and Sharon Osborn for summary judgment dismissing the complaint insofar as asserted against them are denied, the order dated December 27, 2007, is modified accordingly, the complaint is reinstated against those defendants, and the action against the defendant Dorotea DeFrancesco is severed; and it is further,

Ordered that one bill of costs is awarded to the defendant Dorotea DeFrancesco, payable by the plaintiffs, and one bill of costs is awarded to the plaintiffs, payable by the defendants St. Vincents's Medical Center, Lilibeth Rubio-Gonzales, Healthcare Associates in Medicine, P.C., Neuroscience Associates of N.Y., and Sharon Osborn.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501 [a] [1]).

On November 5, 2001, the plaintiff Barbara Vaccaro (hereinafter Vaccaro) underwent a C4-C5 posterior foraminotomy decompression at the defendant St. Vincent's Medical Center (hereinafter the Hospital). The surgery was performed by the defendant John Sou-Cheng Shiau, M.D. (hereinafter Dr. Shiau), who was assisted by the defendant Lilibeth Rubio-Gonzales, M.D., an anesthesiologist (hereinafter Dr. Rubio-Gonzales), the defendant Dorotea DeFrancesco, a certified physician's assistant, and other members of the Hospital's staff. Also present was the defendant Sharon Osborn, a somatosensory evoked potentials (hereinafter SSEP) technician who was employed by the defendant Neuroscience Associates of N.Y. (hereinafter Neuroscience), and who, at the time of Vaccaro's surgery, was employed by Neuroscience's predecessor, the defendant Healthcare Associates in Medicine, P.C. (hereinafter Healthcare). Immediately after the surgery was performed, Vaccaro was unable

to move her upper or lower extremities. She was later diagnosed with a spinal cord contusion, resulting in quadriparesis.

The plaintiffs alleged, inter alia, that had SSEP monitoring been performed, or properly performed, during the surgery, Vaccaro would not have sustained, among other things, a spinal cord contusion. The plaintiffs also alleged that the Hospital negligently permitted Dr. Shiau to perform this cervical spine surgery utilizing the "Met-RX procedure."

The Supreme Court properly awarded summary judgment dismissing the complaint insofar as asserted against DeFrancesco. DeFrancesco demonstrated her prima facie entitlement to judgment as a matter of law by presenting the expert affirmation of a neurosurgeon, who opined that she appropriately followed the orders of Dr. Shiau, Vaccaro's private attending physician, that those orders were not contraindicated by normal practice, and that she did not commit any independent acts of negligence (see Martinez v La Porta, 50 AD3d 976, 977 [2008]). In opposition, the expert affirmations submitted by the plaintiffs were insufficient to raise a triable issue of fact as to whether DeFrancesco should have known that any order or decision of Dr. Shiau's was "so contraindicated by normal practice that [she] should have inquired into [its] correctness" (Ventura v Beth Israel Med. Ctr., 297 AD2d 801, 803 [2002]), or that any independent act of negligence on her part proximately caused Vaccaro's injuries.

However, the Supreme Court erred in granting that branch of the Hospital's motion which was for summary judgment dismissing the complaint insofar as asserted against it. Initially, we note that the record contains conflicting evidence as to whether SSEP monitoring was actually performed during the surgery. The hospital record, operative report, and Dr. Rubio-Gonzalez's testimony all support the conclusion that SSEP monitoring was performed throughout the surgery. However, the deposition testimony of Dr. Shiau and Osborn is to the contrary. Dr. Shiau testified that SSEP monitoring was not necessary "in a case like this" and that he neither intended to, nor did, have such monitoring conducted during the surgery, his operative report stating that SSEP monitoring was performed throughout the surgery notwithstanding. Osborn testified that while she attempted to use the SSEP machine made available to her at the Hospital to monitor Vaccaro, attached the electrodes to Vaccaro, and remained in the operating room for about 30 minutes after Vaccaro was anesthetized, when she was unable to obtain a baseline reading for Vaccaro, Dr. Shiau told her to "wrap it up," at which point she left the operating room.

The plaintiffs' anesthesiology expert opined that Vaccaro's surgery required SSEP monitoring and the Hospital had an obligation to ensure that a properly working SSEP monitoring machine was "readily available in the operating room." The plaintiffs' neurosurgery expert concurred. Accordingly, since the Hospital did not demonstrate the absence of any issues of fact as to whether its alleged failure to provide SSEP monitoring was a deviation from the acceptable standard of care, it did not meet its prima facie burden of establishing its entitlement to judgment as a matter of law with respect to that theory of liability (see *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]).

Moreover, the Hospital failed to demonstrate its entitlement to judgment as a matter of law with respect to the plaintiffs' claim that it negligently permitted Dr. Shiau to utilize the Met-RX procedure in performing the surgery. Initially, contrary to the Hospital's contention, this theory of liability was originally asserted in the original complaint and amplified in the bill of particulars. The Hospital demonstrated its prima facie entitlement to judgment as a matter of law by submitting the affirmation of its neurosurgery expert, who opined that the Hospital did not erroneously permit Dr. Shiau to utilize the Met-RX procedure because it was FDA approved, and the decision to use it was "within the sole province of the operating surgeon." In opposition, however, the plaintiffs raised a triable issue of fact through, inter alia, Dr. Shiau's deposition testimony that the Hospital permitted him to use the system, but never inquired into his background and training with the procedure, and that he had used the system in cervical spine surgery only once or twice before, as well as the affirmation of the plaintiffs' neurosurgery and anesthesiology experts, who opined that the Hospital failed to undertake due diligence in determining whether Dr. Shiau had the requisite training and experience to utilize the procedure in cervical spinal surgery.

The Supreme Court also erred in awarding summary judgment dismissing the complaint insofar as asserted against Dr. Rubio-Gonzales. Dr. Rubio-Gonzales demonstrated her prima facie entitlement to judgment as a matter of law by submitting the affirmation of Dr. Elizabeth Frost, an anesthesiologist. Dr. Frost opined, based on her review of the record herein and Vaccaro's medical records, that Dr. Rubio-Gonzales's administration of anesthesia fully conformed with accepted medical practice. In opposition to her prima facie showing, the plaintiffs submitted the expert affirmation of an unidentified anesthesiologist, who opined that SSEP monitoring was required because

the surgery involved a risk of injury to the spinal cord, that both Dr. Shiau and Dr. Rubio-Gonzales knew that it was required, and that, if the monitor was not working, both Dr. Shiau and Dr. Rubio-Gonzales had an obligation to cancel the surgery. In the expert's opinion, the failure of these two physicians to cancel the surgery under those conditions constituted a departure from the acceptable standard of care. Specifically, with respect to Dr. Rubio-Gonzales, the expert stated, "[it] is . . . the attending anesthesiologist's responsibility to familiarize himself/herself with the demands of a particular surgery especially when the surgery is going to be performed with novel, and fundamentally limiting equipment, and to stop the surgeon from performing an elective procedure when necessary monitoring equipment is not being used." Therefore, the plaintiffs raised a triable issue of fact as to whether Dr. Rubio-Gonzales should have intervened if Dr. Shiau proceeded without SSEP monitoring (see *Warney v Haddad*, 237 AD2d 123, 123-124 [1997]).

The Supreme Court also erroneously granted the motion of Healthcare, Neuroscience, and Osborn (hereinafter collectively the Healthcare defendants) for summary judgment dismissing the complaint insofar as asserted against them based upon its conclusions that SSEP monitoring was not conducted during the surgery and that Osborn had no duty to independently determine whether SSEP monitoring should be performed on a patient. Contrary to the Healthcare defendants' contention that no monitoring took place, as noted above, a factfinder could reasonably determine that SSEP monitoring was performed, and the plaintiffs alleged that, if the monitoring was performed, Osborn performed it in a negligent manner, which represented a deviation from the accepted standard of care and proximately caused Vaccaro's injury. Since the Healthcare defendants did not address the allegation that Osborn negligently performed the monitoring, they failed to establish their prima facie entitlement to judgment as a matter of law.

Accordingly, the Supreme Court should have denied those branches of the Hospital and Dr. Rubio Gonzalez's motion which were for summary judgment dismissing the complaint insofar as asserted against them, and the Healthcare defendants' motion for the same relief. Rivera, J.P., Dillon, Belen and Hall, JJ., concur. **[Prior Case History: 18 Misc 3d 1112(A), 2007 NY Slip Op 52499(U).]**