Smith v Zama (2025 NY Slip Op 07357)

Smith v Zama

2025 NY Slip Op 07357

Decided on December 31, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 31, 2025

CV-24-1887
[*1]Lucas Smith et al., Appellants,
vNche Zama et al., Respondents.

Calendar Date:November 12, 2025

Before:Pritzker, J.P., Fisher, McShan, Powers and Mackey, JJ.

DeFrancisco & Falgiatano, LLP, East Syracuse (Charles L. Falgiatano of counsel), for appellants.
Smith Sovik Kendrick & Sugnet PC, Syracuse (Karen G. Felter of counsel), for Nche Zama, respondent.
Ricotta, Mattrey, Callocchia, Markel & Cassert, Buffalo (Tomas J. Callocchia of counsel), for Arnot Ogden Medical Center and others, respondents.
Marks, O'Neill, O'Brien, Doherty & Kelly, PC, New York City (Laurie DiPreta of counsel), for Idriys A. McField, respondent.

Fisher, J.
Appeal from an order of the Supreme Court (Christopher Baker, J.), entered October 22, 2024 in Chemung County, which granted defendants' motions for summary judgment dismissing the complaint.
On November 20, 2018, plaintiff Lucas Smith (hereinafter Smith) presented to defendant Arnot Ogden Medical Center (hereinafter AOMC) with various complaints, including intermittent chest pain and shortness of breath. Initial diagnostic testing revealed a rapid, irregular heart rate and high blood pressure (hypertension). A CT pulmonary angiogram revealed a massive 9.8-centimeter ascending aortic aneurysm, and additional testing led to a diagnosis of atrial fibrillation and atrial flutter. Defendant Idriys McField, a physician assistant, advised Smith that the size of the aneurysm required surgical intervention and that he would remain admitted in the intensive care unit with strict parameters for blood pressure control. Defendant Nche Zama, a cardiothoracic surgeon, performed the surgical repair of Smith's ascending aortic aneurysm on November 26, 2018. Except overnight on the day of the surgery, Smith returned to and stayed in a normal sinus rhythm for the remainder of his hospital stay. On November 30, 2018, he was discharged by McField under the care of Zama with certain medications, including an antiarrhythmic (Amiodarone 200 mg) and an antiplatelet (Aspirin 81 mg). It was further noted that Smith had not yet had a bowel movement but had "good bowel sounds" and was passing flatus, and that he would not be provided a beta blocker or ACE inhibitor due to low blood pressure (hypotension) postoperatively. He was also not prescribed an anticoagulant.
Smith returned to AOMC on December 2, 2018, experiencing shortness of breath, increased abdominal pain and distention, and diarrhea. CT imaging was suggestive of a bowel ischemia and Smith was administered an anticoagulant. Other testing revealed occurrences of atrial flutter, irregular heart rate and high blood pressure. Smith underwent an exploratory laparotomy the next day, which discovered gangrenous and embolic patches throughout parts of his small bowel and colon. As a result, Smith was diagnosed with ischemic bowel secondary to an embolic event and ultimately had approximately 12 feet of small bowel and colon resected.
Smith and his spouse, derivatively, commenced this medical malpractice action against AOMC and the medical professionals who treated him throughout his hospitalizations in November and December 2018. As relevant here, plaintiffs alleged that Zama, McField, AOMC, defendant Arnot Health Inc. and defendant Arnot Medical Services, PLLC (hereinafter collectively referred to as defendants) committed medical malpractice by failing to determine the cause of Smith's atrial fibrillation, failing to prescribe beta blockers and anticoagulants for Smith's discharge, and by failing to appreciate that Smith was not properly anticoagulated postoperatively. After issue was joined and disclosure completed, defendants [*2]moved for summary judgment, contending that their care and treatment of Smith was not a departure from the accepted standard of care.[FN1] Plaintiffs opposed. Supreme Court granted defendants' motions for summary judgment and dismissed the complaint, finding, among other things, that plaintiffs' opposition was conclusory and otherwise failed to address specific assertions made by defendants' expert. Plaintiffs appeal.
We reverse. As the parties seeking summary judgment in this medical malpractice action, "defendants bore the initial burden of presenting factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice by establishing that they complied with the accepted standard of care or did not cause any injury to the patient" (Henderson v Takemoto, 223 AD3d 996, 998 [3d Dept 2024] [internal quotation marks and citations omitted]). "If a prima facie case is established, the burden then shifts to plaintiffs to come forward with proof demonstrating defendants' deviation from accepted medical practice and that such alleged deviation was the proximate cause of plaintiffs' injuries" (Scott v Santiago, 230 AD3d 933, 935 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]). In doing so, "[t]he medical opinion evidence submitted in opposition should not be speculative or conclusory but should address specific assertions made by the physician's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record" (Lubrano-Birken v Ellis Hosp., 229 AD3d 873, 875 [3d Dept 2024] [internal quotation marks and citations omitted]). When "deciding a motion for summary judgment, the function of the court is not to make credibility determinations or findings of fact, but rather to identify material triable issues of fact" (McCarthy v Town of Massena, N.Y. [Massena Mem. Hosp.], 218 AD3d 1082, 1086 [3d Dept 2023] [internal quotation marks and citations omitted]).
Here, defendants satisfied their moving burden in presenting, among other things, Smith's medical records, the deposition testimony of the parties and others who had treated Smith, and the expert affirmation of Eugene A. Grossi, a board-certified general and cardiothoracic surgeon. Grossi opined that defendants appropriately converted Smith from atrial fibrillation to a normal sinus rhythm by virtue of the successful aneurysm repair, whereafter postoperative tests repeatedly confirmed Smith remained in normal sinus rhythm from the morning after his surgery until discharge. Grossi further opined that beta blockers, which function to lower blood pressure, would not be appropriate for a patient exhibiting low blood pressure — like Smith had been postoperatively, including to the point of requiring interventions to increase his blood pressure. Relating to anticoagulants, Grossi highlighted certain evaluations and testing which indicated that Smith was at a low risk for clots and had an international [*3]normalized ratio (hereinafter INR) of 1.6, which he considered to be "adequately anticoagulated." Grossi explained that the use of anticoagulants after a major cardiothoracic surgery created a potential risk for significant postoperative bleeding, and since Smith did not have a metabolic problem, mechanical valve, high clot score or persistent atrial fibrillation, that prescribing Aspirin 81 mg on discharge was appropriate.
As defendants met their prima facie burden, it was incumbent upon plaintiffs to raise a triable issue of fact in opposition. Plaintiffs submitted the expert affirmation of a board-certified general and cardiothoracic surgeon, who opined that defendants failed to determine the cause of Smith's atrial fibrillation and incorrectly assumed the aneurysm repair would resolve his irregular heart rhythm. Specifically, the expert explained there are numerous potential causes for Smith's preoperative atrial fibrillation besides an aneurysm, including multiple causes at the same time, and nonetheless cardiac surgery patients like Smith are already at an increased risk for postoperative atrial fibrillation. Each of these points are consistent with the deposition testimony from McField and Zama, wherein Zama further testified that over 33% of cardiac surgery patients will develop postoperative atrial fibrillation "no matter what you do." Because of this, the expert explained that the antiarrhythmic prescribed by defendants was not enough, and that beta blockers in postoperative cardiac surgery patients have been shown to decrease the incidence of atrial fibrillation and are part of an "anti-impulse therapy," which works to manage a patient's heart rate and blood pressure. The expert further explained that anticoagulants given to patients with intermittent atrial fibrillation can decrease the risk of embolic events post-cardiac surgery, but the aspirin prescribed at discharge was not an anticoagulant and was otherwise insufficient to do so. To this point, the expert disagreed that Smith was "adequately anticoagulated," and opined that an INR of 1.6 was too low and should have been increased to between 2-3 to prevent clots from forming when there is an unknown etiology of preoperative atrial fibrillation — particularly in light of Smith's increased risk for postoperative atrial fibrillation from cardiac surgery. The expert concluded that these failures were deviations from the accepted standard of care and that, had defendants prescribed Smith beta blockers and anticoagulants at discharge, he would not have developed the numerous embolic patches and bowel ischemia ultimately leading to his permanent injuries.
Contrary to defendants' contentions, the affirmation by plaintiffs' expert was not speculative or conclusory, but rather relied on evidence in the record to rebut the opinions of their expert (see Matney v Boyle, 237 AD3d 1382, 1385 [3d Dept 2025]). Indeed, when Smith was re-admitted two days after being discharged by defendants, testing [*4]confirmed occurrences of an irregular heartbeat, high blood pressure and an atrial flutter — conditions that plaintiffs' expert explained are managed by a beta blocker that should have been provided on discharge. Smith was then prescribed an anticoagulant, despite the risks articulated by defendants and Grossi for a patient after major cardiac surgery, which plaintiffs' expert opined was necessary on discharge to prevent clotting events such as the ones experienced by Smith two days after leaving the hospital. Further, since it is undisputed that Smith's bowel injuries had a clot-related origin, the difference in opinions between Grossi and plaintiffs' expert as to what constituted adequate anticoagulation — notably based on Smith's INR — created a material question of credibility and fact for a jury to resolve (see Scott v Santiago, 230 AD3d at 938). Accordingly, when giving plaintiffs the benefit of all reasonable inferences as the nonmoving parties, Supreme Court should have denied defendants' motions for summary judgment (see Lubrano-Birken v Ellis Hosp., 229 AD3d at 879; Sovocool v Cortland Regional Med. Ctr., 218 AD3d 947, 953 [3d Dept 2023]; Schwenzfeier v St. Peter's Health Partners, 213 AD3d 1077, 1080 [3d Dept 2023]). We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.[FN2]
Pritzker, J.P., McShan, Powers and Mackey, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, and motions denied.

Footnotes

Footnote 1: McField moved separately, additionally contending that he acted under the supervision of Zama and, therefore, had no independent decision-making authority with respect to Smith's care.

Footnote 2: Although Grossi opined that McField and Zama maintained appropriate communication with each other, Grossi failed to address whether McField properly carried out the orders of Zama and acted at all times under the direction, control and supervision of Zama, and therefore McField was not entitled to summary judgment on the separate grounds that he exercised no independent medical judgment (compare Molina v Goldberg, 231 AD3d 46, 51 [2d Dept 2024]; Motto v Beirouti, 90 AD3d 723, 724 [2d Dept 2011]; Vaccaro v St. Vincent's Med. Ctr., 71 AD3d 1000, 1002 [2d Dept 2010]).